ALICE MOORE v. JOHN C. CRUMPTON, CAROL CRUMPTON, AND JOHN C. CRUMPTON, JR.

No. 76PA82

(Filed 5 October 1982)

1. **Parent and Child § 8— tort by unemancipated child—liability of parent for failure to control child's behavior**

     The parent of an unemancipated child may be held liable in damages for failing to exercise reasonable control over the child's behavior if the parent had the ability and the opportunity to control the child and knew or should have known of the necessity for exercising such control. Before it may be found that a parent knew or should have known of the necessity for exercising control over the child, it must be shown that the parent knew or in the exercise of due care should have known of the propensities of the child and could have reasonably foreseen that failure to control those propensities would result in injurious consequences.

2. **Parent and Child § 8— rape by unemancipated child—parents not liable for damages**

     In an action against defendant parents to recover damages for their unemancipated son's rape of plaintiff after he had used alcohol and drugs, summary judgment was properly entered in favor of defendant mother because she had no opportunity and no reason to know of any necessity on her part to control the child where the evidence before the court showed that the mother and father were separated; the son had been placed under the exclusive care and control of the father; and the mother was at the beach at the time of the rape and had had no contact with or responsibility for the son for over a month. Furthermore, summary judgment was properly entered for defendant father because the evidence before the court would not support a conclusion that he either knew or should have known that he had the ability reasonably to control his son's actions so as to prevent injurious consequences or a conclusion that he knew or should have known that his failure more closely to control the son would result in generally injurious consequences to anyone other than the son himself where it showed: the son was seventeen years old at the time of the rape; the son left home and the rape occurred during the very early morning hours at a time when parents ordinarily would not be expected to be engaged in maintaining surveillance of their children; the parents knew that the son had used controlled substances and alcohol, that he had engaged in sexual intercourse, and that he had committed an assault on another person with a deadly weapon a year or more before the attack on plaintiff; the parents had obtained psychiatric and psychological counseling help for the son because of his problems with drugs and alcohol; and two experts who had examined the son indicated to the parents that there was no reason to foresee that the son would be harmful to himself or others and that they did not think the son could be involuntarily committed to an institution.

**3. Rules of Civil Procedure § 56— summary judgment before compliance with discovery order—harmless error**

Any error in the trial court's entry of summary judgment for defendants before defendants had complied with prior orders directing them to make discovery was harmless where the point which plaintiffs sought to prove by the items defendants had been ordered to produce was shown by other evidence before the court.

Justice MARTIN took no part in the consideration or decision of this case.

ON discretionary review of the decision of the Court of Appeals, 55 N.C. App. 398, 285 S.E. 2d 842 (1982) (Opinion by *Judge Wells* with *Judge Arnold* concurring and *Judge, now Justice, Harry C. Martin* concurring in the result) which affirmed summary judgment in favor of the defendants entered by *Judge James H. Pou Bailey* 18 November 1980 in Superior Court, ORANGE County.

*Epting, Hackney & Long, by Lunsford Long, for plaintiff-appellant.*

*Robert B. Glenn, Jr., and Newsom, Graham, Hedrick, Murray, Bryson, Kennon & Faison, by James L. Newsom, for defendant-appellees.*

MITCHELL, Justice.

The most significant issue presented by this case is whether a parent of an unemancipated minor child may be held liable in damages for failing to take reasonable steps to exercise control over the child's behavior. We conclude that a parent may be held liable in such situations, if the parent knows or should know that he or she has the ability and opportunity to control the child and knows or should know of the necessity for exercising such control.

The plaintiff brought this personal injury action against the defendant, John C. Crumpton, Jr. and his parents, the defendants John C. Crumpton and Carol Crumpton, alleging that John, Jr. had raped her during the early morning hours of 28 June 1978. On that date John, Jr. was 17 years old having been born on 19 October 1960. The plaintiff further alleged that the defendants John and Carol Crumpton knew or had reason to know that John, Jr. used drugs and was of a dangerous mental state and disposition which made it foreseeable that he would intentionally injure

others unless reasonable steps were taken to supervise and control him. The plaintiff asserted that the defendants John C. Crumpton and Carol Crumpton had a legal duty to exercise reasonable care to control and supervise John, Jr. so as to prevent him from intentionally injuring others. She alleged that they failed to perform this duty, in that they failed to prevent John, Jr. from having access to and using illegal drugs and deadly weapons and failed to prevent him from going abroad alone at night after having used such drugs and after having gained possession of such deadly weapons. She further alleged that, as a proximate result of the negligence of the defendants John and Carol Crumpton, the defendant John C. Crumpton, Jr. broke into her home while under the influence of illegal drugs and repeatedly raped her by force and against her will after using a deadly weapon, a knife, to overcome her resistance.

At the time the trial court ruled upon these defendants' motion for summary judgment, the forecasts of evidence of the parties consisted of materials contained in their pleadings, supporting affidavits, depositions and exhibits. The forecasts of evidence of the parties established that John Crumpton, Jr. was one of five children of John and Carol Crumpton. John, Jr. was born with a club foot and was found during early childhood to have hypoglycemia, diabetes and ulcerative colitis. During his childhood and early adolescence, his family life was comfortable and secure. He went with his parents and grandparents on regular hunting, fishing and golfing activities as well as on frequent trips to the beach.

He began using marijuana and other controlled substances at an early age, however, and was a regular user of various controlled substances by the time he was thirteen years old. His parents were aware of his use of controlled substances and attempted by various methods to discourage his use of these illegal substances. John, Jr. continued the use of controlled substances, purchasing them at times with the allowance money his parents still gave him on an irregular basis and at times with money he earned from part-time jobs. During this period of his life, John, Jr. frequently argued with his parents and skipped school. He was once arrested for carrying a concealed knife. He also impregnated a young girl and apparently was hospitalized on one occasion for a drug overdose. Prior to the rape of the plaintiff, John,

Jr. owned or was in possession of various hunting knives and guns given to him by his parents. Although his parents kept alcoholic beverages in the home, the pint of bourbon which John, Jr. drank on the night of the rape was apparently obtained at a friend's home.

During May of 1978, Carol Crumpton and John Crumpton separated and she moved to a new address. By agreement of the couple, Carol Crumpton took their three youngest children to live with her, and John Crumpton had custody of John, Jr. and one other child of the marriage. On 28 June 1978, Carol Crumpton was on vacation at the beach. Sometime prior to that date, John Crumpton completed plans for a vacation for himself and the other child in Hawaii. Before leaving home, he made arrangements for John, Jr. to visit with grandparents in Roxboro. Apparently, after his father left Chapel Hill on vacation, John, Jr. drank a large amount of whiskey, took some type of controlled substances, got "high" and broke into the plaintiff's home on 28 June 1978 and raped her.

The forecasts of evidence of the parties also tended to indicate that the defendants John and Carol Crumpton consulted a psychologist when John, Jr. was nine years old due to problems associated with his physical infirmities. They sought the help of school guidance counselors and various mental health professionals when John, Jr. was in junior high school and had developed academic and drug related problems. The parents made frequent attempts to discipline John, Jr. and to reason with him. They sent him to a private high school during the tenth grade in order to provide a change of environment, and he performed well there. They returned him to the private high school for the eleventh grade, but John, Jr. refused to stay and returned home early during that school year. John, Jr. and his parents went to numerous mental health professionals for counseling. In addition to this counseling, John, Jr. was treated by John A. Gorman, Ph.D., a clinical psychologist, and Landrum S. Tucker, M.D., a psychiatrist. Each of these men saw, diagnosed and treated John, Jr. on several occasions. Dr. Tucker saw John, Jr. on five occasions in January and February of 1978 and among other things reviewed his psychological testing. Both Dr. Gorman and Dr. Tucker indicated to the defendants John and Carol Crumpton that John, Jr. was not disposed toward violent or dangerous behavior

and that he was not a person who should or could be involuntarily committed. Although both doctors indicated that John, Jr. would require continued treatment, he broke off his counseling with both of them. His parents could not or did not require him to return.

Based upon the foregoing forecasts of evidence by the parties, the trial court granted summary judgment for the defendants John and Carol Crumpton. The plaintiff appealed to the Court of Appeals which affirmed the judgment of the trial court. The plaintiff petitioned this Court for discretionary review which we allowed.

The plaintiff contends that the Court of Appeals erred when it concluded that:

> parents cannot be held liable in negligence for the wrongful acts of their unemancipated children unless (1) there is an agency relationship; (2) the parent has directly aided, abetted, solicited, or encouraged the wrongful act; or (3) the parent has entrusted the child with a dangerous instrumentality, the use of which caused the injury.

It is necessary to our resolution of this issue that we review the law of this jurisdiction relative to the liability of parents for the torts of their unemancipated children. Having done so, we conclude that the Court of Appeals applied an incorrect rule of law.

As there is no controlling statute on the issue of the liability of the defendant parents in the present case, the common law controls. In North Carolina and in all other jurisdictions applying common law principles, it is a well-established doctrine that the mere fact of parenthood does not make individuals liable for the wrongful acts of their unemancipated minor children. *Brittingham v. Stadiem*, 151 N.C. 299, 66 S.E. 128 (1909). *See*, Annot. 54 A.L.R. 3d 974 (1973). But while relationship alone does not make a parent liable for the wrongful acts of an unemancipated minor child, a parent who knows or should know of dangerous propensities of his child may be held liable for failing to exercise reasonable control over the child so as to prevent injury to others caused by these dangerous propensities. *Lane v. Chatham*, 251 N.C. 400, 111 S.E. 2d 598 (1959).

We are aware that certain of our prior cases may be read as limiting a parent's liability for acts of the parent's unemancipated child to those situations in which the parent specifically approved the act of the child or in which the child acted strictly in the capacity of servant or agent for the parent, *E.g. Hawes v. Haynes*, 219 N.C. 535, 14 S.E. 2d 503 (1941); *Robertson v. Aldridge*, 185 N.C. 292, 116 S.E. 742 (1923); *Linville v. Nissen*, 162 N.C. 95, 77 S.E. 1096 (1913); *Brittingham v. Stadiem*, 151 N.C. 299, 66 S.E. 128 (1909). To the extent that these and other cases may be construed as placing such limitations upon a parent's liability for the acts of the parent's unemancipated child, they are overruled.

In other cases we have pointed out that a parent also may be liable for the acts of an unemancipated child if the parent was *independently negligent*, "as in permitting the child to have access to some dangerous instrumentality." *Smith v. Simpson*, 260 N.C. 601, 609, 133 S.E. 2d 474, 480 (1963) (quoting 3 Strong: N.C. Index, Parent and Child, § 7, p. 529, currently found in 10 Strong's N.C. Index 3d, Parent and Child, § 8, p. 39). The quoted words were intended by us only to serve as an example of one type of act for which a parent could be found independently negligent and not intended to describe the sole situation in which a parent could be held liable for independent negligence. A proper interpretation of the applicable rules would allow no such limitation upon the liability of parents for negligent failure to control their unemancipated children. The liability of a parent for failure to exercise reasonable control over an unemancipated child arises from the *independent negligence of the parent* and not from the imputed negligence of the child. *Anderson v. Butler*, 284 N.C. 723, 202 S.E. 2d 585 (1974). Thus, a parent may be held liable for the independently negligent act of failing to exercise reasonable control without regard to whether the unemancipated child's tort is intentional or the result of negligence.

[1] The correct rule is that the parent of an unemancipated child may be held liable in damages for failing to exercise reasonable control over the child's behavior if the parent had the ability and the opportunity to control the child and knew or should have known of the necessity for exercising such control. *Langford v. Shu*, 258 N.C. 135, 128 S.E. 2d 210 (1962); *Lane v. Chatham*, 251 N.C. 400, 111 S.E. 2d 598 (1959). RESTATEMENT (SECOND) OF TORTS

§ 316 (1965); 67A C.J.S. *Parent & Child*, § 125 (1978); 54 A.L.R. 3d 974 (1973); 59 Am. Jur. 2d *Parent and Child* § 133 (1971). Before it may be found that a parent knew or should have known of the necessity for exercising control over the child, it must be shown that the parent knew or in the exercise of due care should have known of the propensities of the child and could have reasonably foreseen that failure to control those propensities would result in injurious consequences. *Lane v. Chatham*, 251 N.C. 400, 111 S.E. 2d 598 (1959). This does not mean that the particular injury occurring must have been foreseeable, but merely that consequences of a generally injurious nature might have been expected. *White v. Dickerson, Inc.*, 248 N.C. 723, 105 S.E. 2d 51 (1958); *Bowen v. Mewborn*, 218 N.C. 423, 11 S.E. 2d 372 (1940). The issue in the final analysis is whether the particular parent exercised reasonable care under all of the circumstances. *Langford v. Shu*, 258 N.C. 135, 139, 128 S.E. 2d 210, 213 (1962).

We turn now to the application of these rules in the present case. The plaintiff contends that the forecast of evidence was sufficient to require that this case be submitted to the jury on the issue of the defendants' alleged negligence and the issue of damages. We disagree and are of the opinion that the trial court correctly entered summary judgment for the defendants John C. Crumpton and Carol Crumpton.

Summary judgment should rarely be granted in negligence cases. *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 251 S.E. 2d 419 (1979). Even where there is no dispute as to the essential facts, where reasonable people could differ with respect to whether a party acted with reasonable care, it ordinarily remains the province of the jury to apply the reasonable person standard. Additionally, before summary judgment will be properly entered, the moving party has the burden to show the lack of a triable issue of fact and to show that he is entitled to judgment as a matter of law. *Oestreicher v. American National Stores, Inc.*, 290 N.C. 118, 225 S.E. 2d 797 (1976).

The plaintiff contends that the forecasts of evidence presented to the trial court by the parties conflicted as to crucial issues which could only be resolved by a jury trial. The plaintiff also contends that the reasonableness standard could only be applied in this case by the jury. In support of this contention, the

plaintiff points specifically to various discrepancies in the statements of the defendants. For example, John, Jr. testified that he went home at 12:10 a.m. on 28 June 1978 after drinking nearly a pint of bourbon, taking "crystal THC" and "smoking some reef," and that he took "acid" after he arrived home. He testified that he thereafter left home and went to the plaintiff's house where the rape occurred. He also testified that when he arrived home after the rape, his father and sister were still there and that "by six or seven I was coming down off my high and I was pretty sure that they were there." The defendant John C. Crumpton, father of John, Jr., indicated that he had already left for California and Hawaii with his daughter by this time.

As another example, John, Jr. indicated that on several occasions he had "run away from home" and stayed with a girl in Washington. His parents indicated that he did go to see the girl but that he did not run away. Also, at one point the defendant Carol Crumpton stated that she took John, Jr. to a child psychologist in Chapel Hill as a result of John, Jr.'s problem with "pot and friends." The defendant father indicated that John, Jr. went to see Dr. Gorman because he was not taking the necessary medication for his diabetic condition. John, Jr. said he saw all of his therapists because of drugs.

Other examples of conflicts in the testimony of the defendants are apparent. John, Jr. said he argued with his mother over drugs and that his father was aware of these arguments. John, Jr. further indicated that he had never struck his mother. The defendant father said that the arguments were over John, Jr.'s diabetic condition and his household duties and that John, Jr. never struck his mother. The defendant mother said that the arguments were over drugs, alcohol and household duties, and that John, Jr. did strike her on one occasion. The father said that John, Jr. was never seen at North Carolina Memorial Hospital for a drug overdose. John, Jr. said he was seen for this reason "a couple of times." The defendant mother said that he was seen for this reason on only one occasion.

It would serve no purpose to set forth further conflicts in the testimony of the three defendants which are pointed out by the plaintiff in her brief. Even when these conflicts are construed in the light most favorable to the plaintiff and most adverse to the

defendant parents, John C. Crumpton and Carol Crumpton, the
defendant parents were entitled to summary judgment in their
favor.

[2] Summary judgment in favor of the defendant Carol Crump-
ton was clearly correct. She separated from the defendant John
Crumpton in May of 1978 and moved out of his home. John, Jr.
and one other child continued to live in the home with their
father. The couple's three other children lived with Carol Crump-
ton. From May of 1978 forward, Carol Crumpton did not have
custody or control of her son John, Jr. Since the child had been
placed under the exclusive care and control of his father, the
mother had no opportunity and no reason to know of any necessi-
ty on her part to control the child. On 28 June, 1978, the night the
plaintiff was raped, the defendant Carol Crumpton was at the
beach, far away from Chapel Hill, and had had no regular contact
with or responsibility for the 17 year old boy for over a month.
The facts brought out at the summary judgment hearing failed to
disclose any forecast of evidence that she knew or should have
known that there was any necessity for her to control the child
she had left in the custody of his father. Summary judgment in
her favor was proper.

We next consider the liability *vel non* of the defendant
father, John C. Crumpton. His son John, Jr. was 17 years old at
the time of the rape of the plaintiff. That rape occurred approx-
imately four months prior to the child's eighteenth birthday. The
opportunity to control a young man of this age obviously is not as
great as with a younger child. The crime involved occurred dur-
ing the very early morning hours after parents would ordinarily
be expected to be in bed. Short of standing guard over the child
twenty-four hours a day, there was little that the defendant
father could do to prevent John, Jr. from leaving the home after
the father was asleep. If John, Jr.'s testimony that, although
under the influence of alcohol and various controlled substances,
he was "pretty sure" that his father was at home at the time the
plaintiff was raped is to be believed, he apparently left home
after midnight and at a time when parents ordinarily would not
be expected to be engaged in maintaining surveillance of their
children.

John, Jr.'s use of controlled substances involved serious
violations of the criminal law. Even when parents are aware that

their children have previously engaged in such conduct, there frequently is little they can do to prevent a reoccurrence of such use by their teenage children. The defendant parents in the present case sought professional help for John, Jr. early and often. We fail to see that much more could have been done by them, short of physically restraining his movements and placing him under twenty-four hour a day observation. We note that the failure to control John, Jr. was not limited to the parents' effort. The State has made the use of some of the controlled substances which John, Jr. apparently used shortly before the rape a major felony. Even this failed to prevent this young man, of an age to be fully responsible for his criminal acts in this jurisdiction, from engaging in such felonious activities.

We find no indication in the forecasts of evidence that the defendant parents had any indication that John, Jr. was disposed to commit the crime committed against the plaintiff. At worst the parents were aware that John, Jr. had been involved in an assault on another person with a deadly weapon a year or more before the attack on the plaintiff. They knew he had used controlled substances and were aware that he had engaged in sexual intercourse. However, they had no recent information to indicate that another assault might occur or that John, Jr. might become involved in a forcible rape accomplished through the threatened use of a deadly weapon.

Until very recently, acts such as those John, Jr. directed toward the plaintiff had the potential of resulting in a sentence of death in this jurisdiction and to this day can result in a sentence of life imprisonment, even for one as young as John, Jr. The failure of the State to control John, Jr.'s conduct through the threat of such drastic consequences, although clearly not dispositive of any issue relative to his parents' liability, would tend to indicate that the ability of the defendant parents in the present case to control him was in fact limited.

The forecasts of evidence of the parties clearly show that the defendant parents began to seek psychiatric and psychological counseling and treatment for John, Jr. at a very early point in his life. They went to considerable expense to obtain such counseling and treatment for John, Jr. and to place him in a private school in order that he might receive additional assistance. Prior to the at-

tack on the plaintiff, both Dr. Gorman and Dr. Tucker who were qualified experts in such matters had examined John, Jr. and had indicated to the defendant parents that there was no reason to foresee that John, Jr. would be harmful to himself or others. For this reason these experts indicated to the parents that they did not think John, Jr. could be involuntarily committed. These two experts continue to hold the view that John, Jr. was not committable prior to the rape of the plaintiff and have so stated in sworn affidavits which are a part of the record before us. Thus, even had the defendant parents anticipated that John, Jr. would have committed a crime of violence at some future date, in all probability they would have been unable to have their minor child committed to an institution. As they had been advised that this potential method of control of John, Jr. was not available, their knowledge or reason to know of means of controlling John, Jr., if such means existed, was greatly reduced. Perhaps parents in such situations could arrange to watch their child twenty-four hours a day. In this case, however, the defendants had other children who also needed care and affection. As the defendant father, John C. Crumpton, had separated from his wife and been left with total responsibility for John, Jr. and one other child, it would have been almost impossible for him to watch John, Jr. twenty-four hours a day.

We do not think that the forecasts of the parties revealed evidence which might be forthcoming and which would support a conclusion that the defendant father either knew or should have known that he had the ability reasonably to control his son's actions so as to prevent injurious consequences. Nor do we think the forecasts would tend to support a conclusion that the father knew or should have known that his failure more closely to control John, Jr. would result in generally injurious consequences to anyone other than, perhaps, John, Jr. Therefore, the trial court correctly entered summary judgment for the defendant father, John C. Crumpton.

[3] The plaintiff further contends that the trial court erred in denying her oral motion to continue the hearing concerning the defendants' motion for summary judgment until such time as the defendants had complied with prior orders directing them to make discovery. Ordinarily the completion of discovery is required prior to granting summary judgment. *See Joyner v.*

*Hospital,* 38 N.C. App. 720, 248 S.E. 2d 881 (1978). The items which the defendants had been ordered to produce included John, Jr.'s report cards from schools in Chapel Hill and other documents which the plaintiff contends would have impeached the defendant parents by showing that they were aware of their son's difficulties in the school system of Chapel Hill. Any error here was harmless to the plaintiff. The forecasts of evidence on behalf of both the plaintiff and the defendants clearly indicated that John, Jr. had difficulty in the public school system in Chapel Hill. Clearly, the parents were well aware of his problems and sought expensive professional help and private schooling for him. Failure of the defendants to produce the report cards and other documents to show that the defendant parents were aware of such facts was not harmful to the plaintiff in this case.

As pointed out by Judge Wells for the majority in the Court of Appeals, this case represents "the story of a modern American family tragedy." Unfortunately, as in this case, such stories often do not have happy endings for the family or society. Although we have rejected the rule of law relied upon by the Court of Appeals, we find the result it reached to be correct. For the reasons stated herein, the opinion of the Court of Appeals affirming the judgment of trial court is

Modified and affirmed.

Justice MARTIN took no part in the consideration or decision of this case.