J.H., A Minor, by Robert HOFFMAN and Margaret Hoffman, His Parents, and Robert Hoffman and Margaret Hoffman in their own right, Appellants,

v.

Shirley PELLAK, Appellee,

v.

Peter Pellak and J.P., A Minor.

Superior Court of Pennsylvania.

Argued July 26, 2000.
Filed Dec. 6, 2000.

Christopher E. Ezold, Bala Cynwyd, for appellants.

Daniel G. Ronca, Horsham, for Shirley Pellak.

Before JOYCE, LALLY–GREEN, and BECK, JJ.

LALLY–GREEN, J.

¶ 1 Appellants, J.H., a minor, by Robert Hoffman and Margaret Hoffman, his parents, and Robert Hoffman and Margaret Hoffman in their own right, appeal an order of the Court of Common Pleas of Montgomery County granting summary judgment in favor of Appellee, Shirley Pellak (Mother). We affirm.

¶ 2 The factual and procedural history, as found by the trial court, is as follows.

On March 24, 1997, J.H., a minor, by and through his parents, Robert Hoffman and Margaret Hoffman, and Robert Hoffman and Margaret Hoffman in their own right, initiated this action by filing a Writ of Summons to recover for injuries allegedly sustained by J.H. in an incident that occurred on March 26, 1995, in which the boy, then age eleven (11), was struck in the head by a pellet, reportedly discharged from an air pistol in the possession of J.P., then age twelve (12). Plaintiffs subsequently filed a Complaint on August 22, 1997, against Shirley Pellak, and J.P.'s grandmother, Elsie Heller, seeking damages arising out of the incident.

Defendants, Shirley Pellak and Elsie Heller, filed Preliminary Objections to Plaintiffs' Complaint on September 29, 1997. On November 20, 1997, this Court approved a Stipulation of Dismissal of Counts II and IV against Defendant, Elsie Heller, dismissing her from this action with prejudice. Following argument, on December 9, 1997, the Court overruled Defendant, Shirley Pellak's Preliminary Objections in the nature of demurrers to the cause of action alleging Ms. Pellak's negligence, as set forth in Counts I and III of Plaintiff's Complaint. On January 26, 1998, Shirley Pellak filed a Joinder Complaint, naming Peter Pellak, J.P.'s father, and J.P. as Additional Defendants, whose own Preliminary Objections were subsequently resolved on April 13, 1999. Thereafter, Defendant, Shirley Pellak, filed a Motion for Summary Judgment which was briefed and argued before the undersigned who, on September 23, 1999, granted Summary Judgment in favor of Defendant, Shirley Pellak. From this Order, the Plaintiffs have taken the instant appeal.

Trial Court Opinion, 4/11/00, at 1–2. (Minors names abbreviated).

¶ 3 Appellants raise two issues on appeal:

1) Whether the lower Court erred in ruling that as a matter of law, Appellee could not have a duty to exercise reasonable care over her minor son while he was in the physical custody of his father.

2) Whether a genuine issue of material fact exists regarding whether Defendant Appellee had the knowledge of the necessity to control her child, and the ability and opportunity to control her child.

Appellants' Brief at 4.

■ ¶ 4 Our standard of review of the grant of a motion for summary judgment is plenary, and is as follows:

It is well settled that when reviewing the propriety of a trial court's order granting summary judgment, we must view the record in the light most favorable to the non-moving party and determine whether the moving party has established that there exists no genuine issue of material fact and that it is therefore entitled to judgment as a matter of law. *Skipworth v. Lead Industries Assoc.*, 547 Pa. 224, 230, 690 A.2d 169, 171 (1997). The non-moving party is entitled to all reasonable inferences. Any doubts as to the existence of a factual dispute must be resolved in the non-moving party's favor and summary judgment is appropriate only in the clearest of cases. *Kingston Coal Co. v. Felton Mining Co., Inc.*, 456 Pa.Super. 270, 690 A.2d 284, 287 (1997).

*Roman Mosaic & Tile Co. v. Aetna Casualty & Surety Co.*, 704 A.2d 665, 668

(Pa.Super.1997). Summary judgment is granted:

> [W]hen the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact. The moving party has the burden of proving the non-existence of any genuine issue of fact. The non-moving party must demonstrate that there is a genuine issue for trial and may not rest on averments in its pleadings. The trial court must resolve all doubts against the moving party and examine the record in the light most favorable to the non-moving party. Summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law.

*Merriweather v. Philadelphia Newspapers, Inc.*, 453 Pa.Super. 464, 684 A.2d 137, 140 (1996), *appeal denied*, 548 Pa. 628, 693 A.2d 967 (1997) (citations omitted).

¶ 5 We address Appellants' second argument first. Appellants argue that a genuine issue of material fact exists regarding whether Mother had the knowledge of the necessity to control her child, and the ability and opportunity to control her child. Appellants specifically rely upon *Frey by & Through Frey v. Smith by & Through Smith*, 454 Pa.Super. 242, 685 A.2d 169 (1996), *appeal denied*, 549 Pa. 701, 700 A.2d 441 (1997). They assert that Mother's "liability arises out of her knowing failure to prevent her child's illegal, unsupervised use of the weapon…. [Mother's] failure to take any action whatsoever permitted her son's unsupervised, careless use of the illegal deadly weapon and allowed the shooting to take place." Appellants' Brief at 25. Appellants contend that the trial court erred in factually determining that Mother neither knew nor had reason to know that she had either the ability or the necessity or opportunity to control her son to prevent him from injuring J.H. Trial Court Opinion, 4/11/00, at 4.

¶ 6 We first address what duty a parent has for the torts of a child. The mere relation of parent and child imposes no liability upon the parent for the torts of the child. *Condel v. Savo*, 350 Pa. 350, 39 A.2d 51, 52 (1944); *Maxwell v. Keas*, 433 Pa.Super. 70, 639 A.2d 1215, 1216 (1994). Parents may be liable, however, where negligence on the part of the parents makes the injury possible. *Frey by & Through Frey v. Smith by & Through Smith*, 685 A.2d at 174. If the injury ought to have been foreseen by the parents, their negligence is the proximate cause of the injury. *Maxwell*, 639 A.2d at 1215. Parental duty to supervise a child has been characterized as a duty to "exercise the control which they [the parents] have over their child, when they know, or in the exercise of due care should know, that injury to another is a natural and probable consequence." *Condel*, 39 A.2d at 53.

¶ 7 We next address the scope of the supervising responsibilities of a parent. This Commonwealth has adopted the Restatement of Torts (2d), Section 316. Section 316 sets forth standards applicable to the supervisory responsibilities of a parent toward a child. *Johnson v. Johnson*, 410 Pa.Super. 631, 600 A.2d 965, 967 (1991); *Erie Insurance Exchange v. Transamerica Insurance Company*, 352 Pa.Super. 78, 507 A.2d 389, 394–95 (1986). Section 316 provides:

> A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
>
> (a) knows or has reason to know that he has the ability to control his child, and
>
> (b) knows or should know of the necessity and opportunity for exercising such control.

¶ 8 The issue of what constitutes parental negligence for the acts of a minor child in custodial situations where the parent

lacks direct control of the child appears to be one of first impression in Pennsylvania. Other jurisdictions, however, have considered this issue. The Arizona Court of Appeals ruled that a non-custodial father could not be held liable on a theory of negligent supervision for damages caused by his son's sexual assault. *Pfaff v. Ilstrup*, 155 Ariz. 373, 746 P.2d 1303 (Ct.App. 1987). The court explained:

> Control requires present ability to affect the conduct of another. Potential ability is insufficient. Given the often tendentious relationships between divorced parents, we believe that the imposition of a duty to exert control over a child the legal custody of whom has been given to another would invite disastrous consequences.

*Id.*, 746 P.2d at 1303. For the same reasons, the Court determined that no claim was stated under Section 316. *Id.*, 746 P.2d at 1304.

¶ 9 Similarly, the Supreme Court of North Carolina ruled that a mother, who did not have custody of her minor son when he raped the plaintiff, was properly dismissed from the matter pursuant to a motion for summary judgment. *Moore v. Crumpton*, 306 N.C. 618, 295 S.E.2d 436, 438 (1982). Moreover, the court ruled that the father, who did have legal custody of the child, was also properly dismissed because he had no information that his son might assault another and the assault occurred at a time and place at which the father could not readily control his son's conduct. *Id.*, 295 S.E.2d at 443. The court ruled that a parent can be liable for failing to take reasonable steps to exercise control over a child's behavior only if the parent has the ability to control the child, and knows or should know of the need to control the child. *Id.*, 295 S.E.2d at 440.

¶ 10 Other states have construed Section 316, although not in the context of joint or partial custody situations. In Illinois, the court ruled that the parents of a child who shot a police officer with a stolen handgun were not liable under a theory of negligent parental supervision even though they were aware that the child had been involved in a prior shooting incident. *Barth v. Massa*, 201 Ill.App.3d 19, 27, 146 Ill.Dec. 565, 558 N.E.2d 528, 534–535 (1990). The Court relied upon Section 316 in its analysis and stated:

> [E]ven if we were to deem that the [parents] had sufficient notice of [the son's] potential to misuse guns, there is simply no evidence of the opportunity to prevent the shooting.... The duty of a parent is only to exercise such ability to control his child as he in fact has at the time when he has the opportunity to exercise it and knows the necessity of so doing. ... Section 316 does not, after all, purport to make parents vicariously liable for raising careless or delinquent children, but instead imposes a duty on parents to exercise that control which they "in fact [have] at the time." No parental liability exists without notice of a specific type of harmful conduct and an opportunity to interfere with it.

*Id.*, 146 Ill.Dec. 565, 558 N.E.2d at 534–535 (citations and quotations omitted).

¶ 11 More recently, the Supreme Court of Maine affirmed summary judgment in favor of parents sued for negligently furnishing their daughter with a jet ski and failing to supervise and train her in its use. *Bedard v. Bateman*, 665 A.2d 214, 215 (Me.1995). The court considered Section 316 and determined that the plaintiff failed to establish that the defendant parents knew or should have known of the necessity to control their daughter's use of the jet ski. *Id.*, 665 A.2d at 214–215.

■ ¶ 12 In light of the above, we hold that a parent has a duty to exercise reasonable care to control his or her minor child under Section 316 when the parent knows or should know of the necessity to exercise control, and has the ability and the opportunity to exercise parental control at the relevant time. *Condel; Moore v. Crumpton; Barth v. Massa; Bedard v. Bateman.*

¶ 13 Here, the record fails to support Appellant's claim that Mother, a non-custodial parent, knew or should have known about the air pistol and had the ability and the opportunity to exercise parental control at the relevant time. The record reveals that on March 12, 1995, fourteen days before the incident, Father had purchased a Crossman .177 caliber model 1377 American Classic air pistol for J.P. Trial Court Opinion, 4/11/00, at 6. *See also*, Deposition of Peter Pellak at 28. Mother did not know of the existence of the air pistol involved in the incident. Trial Court Opinion, 4/11/00, at 4. Two guns were kept, used and maintained solely at Father's house: a previously purchased air rifle, and the air pistol involved in the March 26, 1995 incident.[1] *See*, Deposition of Peter Pellak, at 35. J.P. used the air pistol with the permission of his Father on the date of the incident in question. *Id.* at 74. J.H. was shot while J.P. was at Father's house. *See*, Deposition of J.P., at 135.

¶ 14 Here, Mother did not know about the air pistol and was unaware of the need to supervise the use of the air pistol. Also, since Mother was in a non-custodial situation at the time of the incident, Mother was not in a position to exercise control at the time of the incident. Upon review of the record and the applicable case law, Appellants have failed to demonstrate merit to their claim.

¶ 15 *Frey* does not control this case. The parents in *Frey* had the opportunity to intervene but permitted the unsupervised use of the air gun by their son, thereby creating a reasonably foreseeable risk that another minor would misuse the air gun. In the instant case, Mother neither knew about the existence of the air pistol nor was in a position to control or

supervise the actions of her child at the time of the incident. Appellants' second claim fails.

¶ 16 Appellants' first contention is that Mother has a duty as a matter of law, and as required by public policy, to exercise reasonable care over her minor son while he is in the physical custody of his Father.[2] Appellants rely on principles of domestic relations law and argue that, in joint or shared custody situations, both parents are responsible "for decisions and care of the child." Appellants' Brief at 13.

¶ 17 We determined above that a parent is responsible for the actions of a minor child only when the parent knows or should know of the need to exercise control and has the ability and the opportunity to exercise said control at the time of the incident. Appellants fail to point to any law or to any public policy served by imposing strict liability on a non-custodial parent who neither knows (or should know) of the risk nor has the ability or opportunity to exercise control in the situation. Appellants' claim fails.

¶ 18 In conclusion, we make clear that the duty to exercise reasonable care to control a child must be limited. It arises when a parent at the relevant time knows or should know of the need to exercise parental control and has the ability and opportunity to do so. Neither shared physical custody nor *shared legal custody* for a child changes that standard.

¶ 19 Appellants argue that although Father had physical custody of the child at the time of the accident, the parents had shared legal custody. They assert that, as a matter of law, Mother had shared responsibility for Father's decision to entrust the loaded air rifle to their unsupervised

1. Mother was aware that Father had purchased an air rifle for J.P. for Christmas in 1994.

2. Appellants' public policy argument is as follows: "[h]olding that a non-custodial parent

has no authority or ability to control their child while at a custodial parent's home encourages non-custodial parents to neglect their duties to communicate with the other parent and be knowledgeable about their children's activities." Appellants' Brief at 13.

child. Appellants misapprehend the import of shared legal custody.

¶ 20 Legal custody is defined by statute as "the legal right to make major decisions affecting the best interest of a minor child, including, but not limited to, medical, religious and educational decisions." 23 Pa. C.S. § 5302. Shared legal custody is specifically designed to invite input from both parents on such *major* decisions. *In re Wesley J.K.*, 299 Pa.Super. 504, 445 A.2d 1243, 1247, n. 8 (1982). Shared legal custody was never intended to govern the myriad of daily domestic decisions that a parent with physical custody makes. Nor was it intended to be the basis for imputing negligence to a parent who did not know of the need to exercise control and did not have the ability or opportunity to do so.

¶ 21 Accordingly, on the basis of the foregoing, we affirm the trial court's grant of summary judgment in favor of Mother.

¶ 22 Order affirmed.