**K.H. and D.A.H., Both Individually and as Parents of A.H., Appellants**

v.

**J.R., and N.R., Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 9, 2001.

Filed June 5, 2001.

Reargument Denied Aug. 30, 2001.

Richard L. Orloski, Allentown, for appellant.

Jerry A. Snyder, Allentown, for J.R.

K. Leigh McCardle, Allentown, for N.R.

Before: STEVENS, MONTEMURO * and BECK, JJ.

STEVENS, J.

¶ 1 This is an appeal from the judgment entered by the Court of Common Pleas of

* Retired Justice Assigned to the Superior Court

Lehigh County following the denial of Appellants' motion for post-trial relief. We reverse, vacate, and remand for further proceedings.

¶ 2 The relevant facts and procedural history are as follows: On July 16, 1998, Appellants, K.H. and D. H., individually and as parents of A.H., filed a Complaint to recover for injuries allegedly sustained by A.H. in an incident that occurred on September 27, 1995. On that date, A.H., who was thirteen (13) years of age, was playing with fourteen (14) year old Appellee N.R. (hereinafter "N.R.") at the home of N.R.'s mother, T.K. (hereinafter "Mother"), and stepfather. At the time of the incident, N.R. was in possession of a BB gun that had been given to him by his father, Appellee J.R. (hereinafter "Father"). While they were playing, N.R., believing the gun to be unloaded, pointed it at A.H., pulled the trigger, and unknowingly struck A.H. in the abdomen with a BB. A.H. underwent surgery as a result of the injuries sustained from the incident.

¶ 3 Prior to trial, Father filed a motion for summary judgment, which was granted by the court on January 13, 2000, leaving N.R. as the sole Appellee. Following a trial on February 1 and February 2, 2000, a jury returned a verdict in favor of Appellants in the amount of four thousand six hundred twenty-five dollars ($4,625.00). On February 7, 2000, Appellants filed a Motion for a New Trial on the basis that the verdict was against the weight of the evidence and inadequate. In the Motion, Appellants also sought reconsideration of the court's order of January 13, 2000, which granted Father's motion for summary judgment. By Order dated March 20, 2000, Appellants' motion for post-trial relief was denied. Appellants filed a Notice of Appeal with regard to the Order. Thereafter, on May 30, 2000, Appellants filed a Praecipe to Enter Judgment against N.R.

¶ 4 In the present appeal, Appellants contend that the trial court erred in granting summary judgment in favor of Father in that the undisputed evidence established that Father provided N.R. with a gun without rendering proper supervision. Appellants also claim that the verdict was inadequate as a matter of law.

¶ 5 Father and N.R. contend that this Court lacks jurisdiction to consider Appellants' appeal due their failure: (1) to perfect an appeal in a timely manner; and (2) to obtain a determination of finality regarding the summary judgment decision. Appellees argue that the court's order granting summary judgment in favor of Father did not become final until Appellants filed a Praecipe to Enter Judgment against N.R. on May 30, 2000. Father and N.R. assert that, since Appellants filed their appeal on March 29, 2000, in response to the March 20, 2000 court Order denying Appellants' motion for post-trial relief and prior to the entry of judgment, this Court's review of Appellants' claims regarding the order granting summary judgment is improper. We disagree.

¶ 6 Pennsylvania Rule of Appellate Procedure 905(a) states, in relevant part, that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof." *See Reuter v. Citizens & Northern Bank*, 410 Pa.Super. 199, 599 A.2d 673, 676 (1991) (holding that appellate jurisdiction may be perfected after a notice of appeal has been filed upon docketing of a final judgment). Therefore, although Appellants filed their notice of appeal prior to the entry of judgment, pursuant to Pa. R.A.P. 905(a), the appeal is deemed timely filed.

¶ 7 As noted above, Father and N.R. also contend that this Court lacks jurisdiction to consider Appellants' appeal since Appellants failed to obtain a determination of finality regarding the summary judgment decision. Pennsylvania Rule of Appellate Procedure 341 provides, in pertinent part, as follows:

> (c) **Determination of Finality.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other governmental unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered.

Pa.R.A.P. 341(c). The Note to this Rule specifies that the failure of a party to apply to the lower court for an order of finality "shall not constitute a waiver and the matter may be raised in a subsequent appeal following the entry of a final order disposing of all claims and all parties." As such, Father and N.R.'s claim predicated on this basis is without merit.

¶ 8 We now turn to Appellants' claims set forth in the present appeal, beginning with Appellants' contention that the trial court erred in granting summary judgment in favor of Father. Our scope of review regarding a summary judgment decision is plenary. *Miller v. Sacred Heart Hospital* 753 A.2d 829, 831 (Pa.Super.2000). In considering the trial court's ruling, we are not bound by the court's conclusions of law, but may draw our own inferences and reach our own conclusions. *Adamski v. Allstate Ins. Co.,* 738 A.2d 1033 (Pa.Super.1999). This Court will reverse a trial court's entry of summary judgment only if the certified record indicates that the court committed an error of law or an abuse of discretion. *Todd Heller, Inc. v. United Parcel Service, Inc.,* 754 A.2d 689, 693 (Pa.Super.2000).

¶ 9 Summary judgment is proper:

> when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact. The moving party has the burden of proving the non-existence of any genuine issue of fact. The non-moving party must demonstrate that there is a genuine issue for trial and may not rest on averments in its pleadings. The trial court must resolve all doubts against the moving party and examine the record in the light most favorable to the non-moving party. Summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law.

*Merriweather v. Philadelphia Newspapers, Inc.,* 453 Pa.Super. 464, 684 A.2d 137, 140 (1996) (citations omitted).

¶ 10 Herein, Appellants assert that, based on the evidence in the record, the finder of fact could have determined that Father was negligent in giving a dangerous instrumentality to fourteen (14) year old N.R. without proper supervision. Appellants contend that the trial court committed an error of law in finding that "because [Father] did not have primary physical custody of his son, [N.R.], he cannot be held to have been negligent in supervising his son's use of the BB gun on or around September 27, 1995, because he did not have the right to control or possess his son." Trial Court Opinion dated 3/20/00 at 6.

¶ 11 Liability for the torts of a child cannot be imposed upon a parent merely because of the parent/child relationship.

*Maxwell v. Keas,* 433 Pa.Super. 70, 639 A.2d 1215, 1216 (1994). In *Frey by & Through Frey v. Smith by & Through Smith,* 454 Pa.Super. 242, 685 A.2d 169, 174 (1996), this Court stated, however, that:

> [P]arents may be liable where the negligence of the parents makes the injury possible. If an injury inflicted by a child is the natural and probable result of the parents' negligence, the parents have breached a duty owed to the injured child and his parents. Furthermore, if the injury might ought to have been foreseen by the parents, their negligence is the proximate cause of the injury.

(citations and quotations omitted).

¶ 12 The Restatement (Second) of Torts, Section 316, which sets forth the applicable standards regarding the supervisory responsibilities of a parent toward a child provides as follows:

> A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
>
> (a) knows or has reason to know that he has the ability to control his child, and
>
> (b) knows or should know of the necessity and opportunity for exercising such control.

¶ 13 Recently, in *J.H. v. Pellak,* 764 A.2d 64 (Pa.Super.2000), this Court, in a case of first impression, addressed the issue of parental negligence for the acts of a minor child where the parent lacks direct control of the child. In *Pellak,* J.H., who was then eleven (11) years of age, was struck in the head with a pellet discharged from an air pistol in the possession of J.P., then age twelve (12). At the time of the incident, J.P. was in the physical custody of his father. J.H., by his parents, and his parents, in their own right, filed a Complaint against Shirley Pellak, the mother of J.P., and J.P.'s grandmother, Elsie Heller.[1] Defendant Shirley Pellak filed a motion for summary judgment, which was granted by the trial court. The plaintiffs appealed the ruling of the court contending that the court erred in finding that Ms. Pellak could not have a duty to exercise reasonable care over J.P. while he was in the physical custody of his father; and that a genuine issue of material fact existed regarding whether Ms. Pellak had knowledge of the necessity to control J.P., and the ability and opportunity to control him.

¶ 14 This Court held that "a parent has a duty to exercise reasonable care to control his or her minor child under Section 316 [of the Restatement (Second) of Torts] when the parent knows or should know of the necessity to exercise control, and has the ability and the opportunity to exercise parental control at the relevant time." *Pellak,* 764 A.2d at 67. The Court found that Ms. Pellak did not know about the existence of the air pistol and, thus, was unaware of the need to supervise J.P.'s use thereof. Accordingly, in affirming the trial court's grant of summary judgment in favor of Ms. Pellak, the Court found that the record failed to support the appellants' claim that Ms. Pellak, a non-custodial parent, knew or should have known about the air pistol and had the ability and opportunity to exercise control over J.P. at the relevant time.

¶ 15 In the present case, a review of the record indicates that N.R.'s parents

1. As per the court's approval of a Stipulation of Dismissal, Elsie Heller was dismissed from the action with prejudice.

divorced in 1993, and Mother remarried the same year. N.R. resided with Mother and stepfather and spent weekends with Father. Deposition of Father, 5/11/99 at 87. In 1994, Father purchased a BB gun and gave it to N.R. as a Christmas present. N.T. 2/2/2000 at 86; Deposition of Father, 5/11/99 at 15. Mother agreed to the purchase of the gun provided it was not kept at her home. Deposition of Father, 5/11/99 at 16; Deposition of Mother, 7/29/99 at 14. Subsequently, Father became aware of the fact that N.R. wanted to take the gun to Mother and stepfather's home, and allowed him to do so after being assured by N.R. that Mother approved. Deposition of Father, 5/11/99 at 29. Father, however, did not speak with Mother about the gun being taken to her home. *Id.* Mother testified that she first became aware that N.R. had brought the gun to her home when, during the summer of 1995, she observed the gun lying on her car unattended. Deposition of Mother, 7/29/99 at 15–16. At that time, Mother informed N.R. that she did not want the gun in her home. *Id.* at 16. Mother stated that, in that the incident in question occurred, N.R. obviously did not listen to her. *Id.* Father, apparently unaware that Mother wanted the gun returned to his home since he did not speak with her concerning matter, indicated that he knew the gun remained at Mother's home. Deposition of Father, 5/11/99 at 30–31.

¶ 16 As opposed to the non-custodial mother in *Pellak,* Father was aware of the existence of the BB gun. *See Frey,* 685 A.2d at 174–175. In addition, he knew that N.R. took the gun to the home of Mother and stepfather, and never returned it to Father's home. Thus, the finder of fact could conclude that, if Father allowed N.R. to take the gun to Mother's home absent his supervision, and Father did not speak with Mother concerning the gun remaining in her home, it was reasonably foreseeable that N.R. would misuse the gun.

¶ 17 As is required in considering a motion for summary judgment, if the evidence, viewed in a light most favorable to the non-moving party, creates an issue of material fact, summary judgment is inappropriate. In the present case, there is sufficient evidence, if believed by the jury, to establish that Father knew or should have known of the necessity to exercise control over N.R. and had the ability to do so. Accordingly, summary judgment should not have been granted in favor of Father. Thus, we vacate the grant of summary judgment in favor of Father, and remand to the trial court for further proceedings in accordance with the above discussion.

¶ 18 Finally, Appellants contend that the verdict rendered against N.R. was inadequate as a matter of law. We agree.

A jury verdict is set aside as inadequate when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. Where the jury's verdict is so contrary to the evidence as to 'shock one's sense of justice' a new trial should be awarded.

*Kiser v. Schulte,* 538 Pa. 219, 225–226, 648 A.2d 1, 4 (1994).

¶ 19 A review of the record indicates that upon being shot, A.H. felt pain like never before, N.T. 2/1/00 at 24–27, and became increasingly fearful when told he had to undergo surgery. *Id.* at 30. Appellants presented the testimony of Charles Scagliotti, M.D., who stated that he performed exploratory surgery on A.H.'s abdomen in order to determine the amount of damage that the BB had done

to A.H. After making a six (6) inch long incision, Dr. Scagliotti entered A.H.'s abdomen and found a "small perforation of his liver and he had a through and through perforation of his transverse colon and a perforation of his ascending colon." N.T. 2/2/00 at 30. Dr. Scagliotti noted that any exploratory laparotomy is significant in nature. *Id.* at 32.

¶ 20 Following surgery, A.H. remained in the hospital for 10 days, and underwent psychiatric treatment for fear and refusal to eat. N.T. 2/1/00 at 32. A.H. testified that his scar causes him embarrassment, and he is not as outgoing as he once was. *Id.* at 53, 66. A.H. consulted with Walter Okunski, M.D., a plastic and reconstructive surgeon, who opined that A.H.'s scar would spread and become larger as he grows, and that the appearance of the scar could be lessened but not eradicated. N.T. 2/2/00 at 62, 74. Dr. Okunski testified that a revision of A.H.'s scar would cost between two thousand three hundred dollars ($2,300.00) and two thousand seven hundred dollars ($2,700.00), and would involve a painful recovery. *Id.* at 63–64, 78.

¶ 21 In view of the above circumstances, we find that the verdict of four thousand six hundred twenty-five dollars ($4,625.00) was inadequate, *Kiser, supra;* accordingly, we vacate the verdict.

¶ 22 Based on the foregoing, the order granting summary judgment is reversed, the verdict is vacated, and the case is remanded for a new trial as to the issues of Father's liability and damages.

¶ 23 Reversed, vacated, and remanded for further proceedings. Jurisdiction relinquished.