BENEFICIAL NORTH CAROLINA, INC., Petitioner/Appellant v. STATE OF NORTH CAROLINA *ex. rel.* THE NORTH CAROLINA STATE BANKING COMMISSION, Respondent/Appellee v. GLORIA DELOATCH, Respondent/Intervenor/Appellee

No. COA96-566

(Filed 6 May 1997)

**1. Administrative Law and Procedure § 67 (NCI4th)— agency decision—de novo review—whole record test**

In an appeal arising from plaintiff's application to sell non-credit disability insurance in conjunction with its consumer loan business, the trial court did not err in affirming the Banking Commission's decision where the trial court conducted a *de novo* review of the Commission's order and the order of the trial court stated it had considered the entire record in affirming the Commission's decision.

**Am Jur 2d, Administrative Law §§ 522, 540, 646.**

**2. Administrative Law and Procedure § 65 (NCI4th)— agency decision—failure to engage in rule-making—issue not presented on appeal**

Petitioner's contention that its substantial rights were prejudiced by the Banking Commissions's failure to engage in rule-making regarding other business authority under N.C.G.S. § 53-172 of the Consumer Finance Act was outside the scope of judicial review for this particular proceeding where the judicial review arises from an adjudicatory decision and not from the denial of a rule-making petition.

**Am Jur 2d, Administrative Law § 575.**

BENEFICIAL NORTH CAROLINA v. STATE EX REL. BANKING COMM.

[126 N.C. App. 117 (1997)]

Sovereign immunity as precluding or limiting application of judicial review provisions of Administrative Procedure Act (5 USCS §§ 701 et seq.). 30 ALR Fed. 714.

3. **Consumer and Borrower Protection § 14 (NCI4th)— noncredit insurance—Consumer Finance Act—unpromulgated rules not applied**

The Banking Commission did not apply unpromulgated legislative rules in denying plaintiff consumer finance company's application to sell noncredit disability insurance as "other business" where the findings and conclusions made by the Commission were neither rules as defined in N.C.G.S. § 150B-2(8a) nor legislative rules under *Comr. of Insurance v. Rate Bureau,* 300 N.C. 381, 269 S.E.2d 547 (1980).

**Am Jur 2d, Administrative Law §§ 178, 524; Markets and Marketing § 39.**

**Stare decisis doctrine as applicable to decisions of administrative agencies. 79 ALR2d 1126.**

4. **Consumer and Borrower Protection § 14 (NCI4th)— Consumer Finance Act—other business—noncredit disability insurance—willingness to comply with statutes—denial of application**

The Banking Commission did not err in denying plaintiff consumer finance company's application to sell noncredit disability insurance as "other business" despite plaintiff's willingness to comply with subsections (c), (d), and (e) of N.C.G.S. § 53-172 because those subsections apply only after the Commissioner authorizes other business upon a finding that it is not contrary to the best interests of the borrowing public.

**Am Jur 2d, Administrative Law §§ 248, 391; Insurance § 32.**

5. **Consumer and Borrower Protection § 14 (NCI4th)— Consumer Finance Act—noncredit disability insurance— denial of application—substantive due process—not arbitrary and capricious**

The Banking Commission's denial of plaintiff consumer finance company's application to sell noncredit disability insurance as "other business" did not violate plaintiff's substantive due process rights since the Commission's decision was rationally

BENEFICIAL NORTH CAROLINA v. STATE ex rel. BANKING COMM.

[126 N.C. App. 117 (1997)]

related to the N.C.G.S. § 53-172 goal of protecting the best interests of the public, and plaintiff may sell such insurance in a location where it does not conduct its licensed loan business. Nor was the Commission's decision arbitrary and capricious because it has a rational basis in the whole record.

**Am Jur 2d, Administrative Law §§ 248, 253; Insurance § 32.**

**Statement of reasons under Administrative Procedure Act (5 USCS § 555(e)), for denial of written application, petition, or other request of interested person made in connection with agency proceeding. 57 ALR Fed. 765.**

Appeal by petitioner from judgment entered 25 January 1996 by Judge Henry V. Barnette, Jr. in Wake County Superior Court. Heard in the Court of Appeals 30 January 1997.

*The Sanford Law Firm, by Kurt E. Lindquist II and Deanna L. Davis, for petitioner-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General L. McNeil Chestnut and Assistant Attorney General Philip A. Lehman, for respondent-appellee.*

*North Carolina Justice and Community Development Center, by Robert M. Schofield, for respondent-intervenor-appellee.*

McGEE, Judge.

This appeal arises from an application by Beneficial North Carolina, Inc. (BNCI) under the North Carolina Consumer Finance Act (CFA), N.C. Gen. Stat. section 53-164 *et seq.*, to sell a form of non-credit disability insurance known as Liberator Income Protector Plan (LIPP) in conjunction with its consumer loan business.

On 3 March 1993, BNCI applied to the Commissioner of Banks for North Carolina (Commissioner) for other business authority under N.C. Gen. Stat. section 53-172 of the CFA to sell LIPP on the same premises where BNCI conducts its loan business. The Commissioner denied BNCI's application, and BNCI petitioned the North Carolina State Banking Commission (Commission) for review. After review, the Commission remanded the matter to the Commissioner for an evidentiary hearing. On 23 December 1993, the Commissioner allowed

Gloria Deloatch to intervene on behalf of herself and a class of low income consumers.

At the evidentiary hearing, BNCI presented the following evidence regarding its proposed sale of LIPP in conjunction with its consumer loan business. At the time of its application, BNCI was already selling credit insurance with its loans as permitted by N.C. Gen. Stat. section 53-189. The LIPP product BNCI proposed to sell is non-credit income replacement disability insurance. Unlike credit insurance, LIPP benefits do not pay off the balance of the loan but are paid directly to the claimant. As with its credit insurance, BNCI would give its customers the option to finance the full premium for LIPP coverage in advance as part of the loan principal. LIPP is underwritten by Old Republic Life Insurance Company (Old Republic), and the policy form has been approved by the North Carolina Department of Insurance.

Purchase of LIPP by BNCI's loan customers would be voluntary, and more specifically, would not be a condition for loan approval. Purchasers would be given a thirty day right of cancellation for full refund of the premium and a pro rata refund for cancellation after thirty days. The refund would be paid directly to the purchaser, would not be applied automatically to reduce the indebtedness, and BNCI would not re-amortize the loan. LIPP purchasers would be required to sign a request and authorization form containing disclosures regarding their cancellation rights, payment and financing options, and the voluntary nature of the coverage. Although its office managers and assistant branch managers would become licensed insurance agents in order to sell LIPP, other employees, not licensed as insurance agents, would be involved in general solicitation activity for LIPP. BNCI's witnesses testified that, in their opinion, the sale of LIPP by BNCI would not be contrary to the best interests of the borrowing public.

Intervenor Gloria Deloatch presented the testimony of Carlene McNulty, a legal aid attorney qualified as an expert in counseling clients with CFA loans. McNulty testified that her clients are usually desperate to borrow money, tend to sign whatever document is placed in front of them, and are often unaware that they have purchased insurance along with their loans. She testified that in most cases the loan documents are prepared in advance by the finance company with the insurance premiums already factored into the loan terms. She also testified that clients do not usually differentiate

BENEFICIAL NORTH CAROLINA v. STATE ex rel. BANKING COMM.

[126 N.C. App. 117 (1997)]

between credit and non-credit insurance sold with their loans. In McNulty's opinion, BNCI's proposed sale of LIPP in conjunction with its consumer loan business would be contrary to the best interests of the borrowing public.

On 11 August 1994, the Commissioner issued an order containing findings of fact and conclusions of law and denying BNCI's application. In this order, the Commissioner conditionally offered to approve BNCI's application if BNCI would institute specified disclosure procedures as to both LIPP and credit insurance sales and would certify that all loan officers involved in the sale of LIPP in conjunction with CFA loans were fully licensed insurance agents. BNCI appealed to the Commission which adopted and affirmed the Commissioner's order on 28 October 1994. BNCI then petitioned for judicial review in Wake County Superior Court. In a memorandum of decision filed 15 December 1995 and judgment entered 25 January 1996, Judge Henry V. Barnette, Jr. affirmed the Commission's decision. BNCI appeals.

Before addressing BNCI's contentions, we summarize the statutory context of this appeal. Under the CFA, licensed consumer finance lenders are permitted to charge higher rates of interest than conventional lenders. *See* N.C. Gen. Stat. § 53-166 (1994); N.C. Gen. Stat. § 173 (1994); N.C. Gen. Stat. § 53-176 (1994). In return for the authority to charge higher interest rates under the CFA, consumer finance lenders are subject to licensing and regulation by the Commissioner. *See* G.S. § 53-166. Under the CFA, licensed lenders are allowed to sell various forms of credit insurance along with their loans. *See* N.C. Gen. Stat. § 53-189 (1994). However, they are not permitted to solicit or transact any "other business" in the same business location where they make their loans unless the Commissioner authorizes the other business as provided in N.C. Gen. Stat. section 53-172. It is the Commissioner's refusal, as upheld by the Commission and by the superior court, to authorize such other business as requested by BNCI, that is at issue in this appeal.

BNCI contends the superior court should have reversed the Commission's decision on the ground that BNCI's substantial rights have been prejudiced for all of the reasons set forth in N.C. Gen. Stat. section 150B-51(b) of the N.C. Administrative Procedure Act (NCAPA). We first summarize the applicable standard and grounds for review and then address the reasons for reversal asserted by BNCI.

I.

[1] The proper standard of review for the superior court of a final agency decision "depends upon the particular issues presented on appeal." *Act-Up Triangle v. Commission for Health Services*, 345 N.C. 699, 483 S.E.2d 388 (1997); *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994). N.C. Gen. Stat. section 150B-51(b) provides:

> [T]he court reviewing a final decision may affirm the decision of the agency or remand the case for further proceedings. It may also reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
>
> (6) Arbitrary or capricious.

G.S. § 150B-51(b) (1995).

Judicial review of whether an agency decision was based on an error of law requires a *de novo* review. *Walker v. N.C. Dept. of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 354 (1990), *disc. review denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). When the petitioner questions "(1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious," the "whole record" test must be applied. *In re Appeal by McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993). The "whole record" test "requires the reviewing court to examine all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by 'substantial evidence.'" *Amanini*, 114 N.C. App. at 674, 443 S.E.2d at 118. Substantial evidence is "more than a scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Lackey v. Dept. of Human Resources*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982).

The standard of review for an appellate court when reviewing a superior court order affirming or reversing a decision of an administrative agency requires the appellate court to examine "the trial court's order for error of law" just as in any other civil case. *Act-Up Triangle*, 345 N.C. at 706, 483 S.E.2d at 392 (quoting *Amanini*, 114 N.C. App. at 675, 443 S.E.2d at 118-19). "The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Id.* (quoting *Amanini*, 114 N.C. App. At 675, 443 S.E.2d at 118-19).

The trial court in this case properly employed the correct standard of review of the Commission's order and the order of the trial court stated it had considered the entire record in affirming the Commission's decision. Upon review of the issues raised by BNCI, we hold the trial court did not err in affirming the decision of the Commission.

## II.

[2] BNCI first asserts its substantial rights were prejudiced by the Commission's failure to engage in rule-making regarding other business authority under G.S. section 53-172 of the CFA. BNCI contends this failure to make rules requires reversal under G.S. section 150B-51(b). The State contends BNCI's contention is outside the narrow scope of judicial review provided for this adjudicatory proceeding in G.S. section 150B-51.

We agree with the State that this first issue is outside the scope of judicial review for this particular proceeding. "[T]he settled law in this State provides that when the legislature has established an effective administrative remedy, it is exclusive." *Porter v. Dept. of Insurance*, 40 N.C. App. 376, 379, 253 S.E.2d 44, 46, *disc. review denied*, 297 N.C. 455, 256 S.E.2d 808 (1979). N.C. Gen. Stat. section 150B-20 of the NCAPA provides a mechanism for BNCI to petition the Commission to adopt a rule and then to obtain judicial review of the denial of a rule-making petition. *See* N.C. Gen. Stat. § 150B-20 (Cum. Supp. 1996); *Act-Up Triangle v. Commission for Health Services*, 345 N.C. 699, 483 S.E.2d 388 (1997). There is also a Commission rule which permits "any person" to submit a petition "requesting the adoption, amendment, or repeal of a rule." N.C. Admin. Code tit. 4, r. 3B.0101 (February 1976).

Judicial review in this case arises from an adjudicatory decision and not from a denial of a petition for rule-making. Thus, we are limited to review of the Commission's adjudicatory decision. This is not the proper context for BNCI to challenge the Commission's decision not to engage in rule-making regarding other business authority under G.S. section 53-172.

**[3]** BNCI next contends the findings of fact and conclusions of law in the Commission's decision establish that the Commission improperly applied unpromulgated rules in denying its application.

We first examine whether the Commission engaged in rule-making in issuing its decision on petitioner's application. The definition section of the NCAPA defines a rule, in pertinent part, as:

> any agency regulation, standard, or statement of *general applicability* that implements or interprets an enactment of the General Assembly or Congress or a regulation adopted by a federal agency or that describes the procedure or practice requirements of an agency . . . . The term does not include the following: . . . [inter alia] e. Statements of agency policy made in the context of another proceeding.

N.C. Gen. Stat. § 150B-2(8a) (Cum. Supp. 1996) (emphasis added). In *Comr. of Insurance v. Rate Bureau,* 300 N.C. 381, 269 S.E.2d 547 (1980), our Supreme Court distinguished between legislative rules and interpretative rules because interpretative rules are excluded from the rule-making requirements of the NCAPA whereas substantive legislative rules generally are not. *Rate Bureau,* 300 N.C. at 411, 269 S.E.2d at 568.

Under *Rate Bureau,* the relevant inquiry here is whether the Commission's decision shows it is based on unpromulgated legislative rules. *See id.* at 411-12, 269 S.E.2d at 568. *Rate Bureau* defines legislative rules as those that: (1) operate to " 'fill the interstices of the statutes' ", and (2) " 'go beyond mere interpretation of statutory language or application of such language and within statutory limits set down additional substantive requirements.' " *Id.* at 411, 269 S.E.2d at 568 (quoting Charles E. Daye, *North Carolina's New Administrative Procedure Act: An Interpretive Analysis,* 53 N.C.L. Rev. 833, 899 (1975)). In *Rate Bureau,* our Supreme Court also stated that agency imposition of sanctions for violation of a purported "legislative rule" was indicative of whether the rule imposed new substantive requirements. *Id.* at 412, 269 S.E.2d at 568.

BENEFICIAL NORTH CAROLINA v. STATE ex rel. BANKING COMM.

[126 N.C. App. 117 (1997)]

We conclude the Commission's decision does not consist of legislative rules and that, therefore, the Commission did not apply unpromulgated rules in denying BNCI's application. BNCI contends the following findings in the Commission's decision constitute "unpromulgated rules:" (1) its findings regarding loss ratios on BNCI's credit insurance products; (2) its finding that LIPP purchasers who cancel coverage would not receive an automatic reduction of their indebtedness but would have to forward the refund to BNCI to pay off that portion of the debt; (3) its finding that BNCI had no plans to assist LIPP claimants in filing claims; (4) its finding that LIPP claimants will be required to provide multiple medical certifications of disability even when the cost of obtaining the certifications is a financial hardship for the claimant; (5) its finding that BNCI made no assurances that only fully licensed insurance agents would be involved in the sale of LIPP; (6) the Commission's conditional approval of LIPP if BNCI made certain disclosures to its customers in regard to both its credit and non-credit products.

First, these specific findings are not regulations, standards, or statements of "general applicability" under the G.S. section 150B-2(8a) definition of a rule in that they are specific to and descriptive of BNCI's proposed sale of LIPP. These findings highlight the Commission's concerns with BNCI's application to sell LIPP but are not couched as comprehensive principles to be applied to the proposed sale of similar products by other CFA licensees.

In addition, these findings do not fill the interstices of G.S. section 53-172, the relevant statutory provision. In general, G.S. section 53-172 prohibits a CFA licensee from conducting its CFA loan business "within any office, suite, room, or place of business in which *any other business* is solicited or transacted." G.S. § 53-172(a) (1994) (emphasis added). This statute also provides that the Commissioner "*may* authorize" such other business "if the Commissioner determines that the other business would not be contrary to the best interests of the borrowing public." G.S. § 53-172(b) (1994) (emphasis added). However, the statutory use of the word "may" indicates the Commissioner has the discretion to determine whether such other business should be permitted. The structure and language of the statute also indicate that such authorization operates as an exception to the general prohibition against conduct of such other business by CFA licensees in the same location as their CFA loan business.

Application of the statutory standard "not . . . contrary to the best interests of the borrowing public" is likely to vary based on the pecu-

liar characteristics of the other business applicant and the method by which the other business is to be promoted by the applicant. Nothing in the Commission's decision indicates that the concerns expressed in its findings are applicable to other applicants or give additional substantive meaning to fill the interstices of the "not . . . contrary to the best interests of the borrowing public" standard. The concerns expressed are specific to BNCI's application and simply serve to support the Commission's conclusion that BNCI failed to establish that its proposed sale of LIPP in conjunction with its CFA loan business would not be contrary to the best interests of the borrowing public.

In *Rate Bureau*, the Court also examined whether the purported legislative rules at issue imposed additional substantive requirements. *Rate Bureau*, 300 N.C. at 411-12, 269 S.E.2d at 568. Here, we find the Commission's concerns regarding BNCI's loss ratios, its cancellation refund policy, its disinclination to assist claimants in filing claims, and its disability certification procedure do not impose additional substantive requirements. The Commission's willingness conditionally to approve BNCI's application despite these concerns suggests they were not, in themselves, essential to approval. That is, unlike the audited data requirement in *Rate Bureau*, these findings were not applied "with sanctions." *See id.* at 412, 269 S.E.2d at 568.

The Commission's concern regarding BNCI's plans to involve unlicensed employees in LIPP sales also does not impose an additional substantive requirement. Solicitation of insurance contracts by persons who are not licensed insurance agents is already prohibited under Chapter 58, Article 33 of the General Statutes. *See* N.C. Gen. Stat. § 58-33-25 (Cum. Supp. 1996); N.C. Gen. Stat. § 58-33-120 (1994). The Commission's findings and expressions of concern as to BNCI's compliance with these existing statutory requirements were simply factors the Commission assessed in determining whether BNCI's proposed manner of selling LIPP would be contrary to the best interests of the borrowing public.

In regard to the disclosure requirements for conditional approval, we conclude these also do not impose new substantive requirements. These conditional approval requirements simply represent an attempt by the Commission to offer a fair compromise that would permit BNCI to sell LIPP in conjunction with its loan business in a manner that would alleviate the Commission's concerns that consumers be

made fully aware of the financial implications of purchasing LIPP in conjunction with their loans. In sum, the findings and conclusions made by the Commission were neither rules as defined in G.S. section 150B-2(8a) nor legislative rules under *Rate Bureau.* We hold the Commission did not apply unpromulgated rules in denying BNCI's application.

**[4]** BNCI next contends the Commission failed to follow statutory "guidelines" set out in subsections (c), (d), and (e) of G.S. section 53-172 in denying its application. We disagree with BNCI's interpretation of G.S. section 53-172.

Subsection (c) of G.S. section 53-172 sets out requirements which the Commissioner "may" impose on an authorized other business. *See* G.S. § 53-172(c). Subsections (d) and (e) of G.S. section 53-172 impose automatic requirements applicable to any licensee who obtains other business authorization from the Commissioner. *See* G.S. § 53-172(d)(e). These subsections, denominated by BNCI as "guidelines" for approval or disapproval of an other business application, are *not* set out in G.S. section 53-172 as guidelines for the Commissioner's determination of whether a proposed "other business" is "not . . . contrary to the best interests of the borrowing public." Rather, these provisions apply *after* the Commissioner authorizes the other business upon a finding that it is not contrary to the best interests of the borrowing public. That is, even when an "other business" is authorized, it still must comply with subsections (d) and (e) of G.S. section 53-172 and may be required to comply with subsection (c) of G.S. section 53-172. We hold the Commission did not err by denying BNCI's application despite its willingness to comply with subsections (c), (d), and (e) of G.S. section 53-172, and that the Commission's decision is consistent with G.S. section 53-172.

**[5]** BNCI further contends the Commission's decision violated its substantive due process rights because there is no reasonable relationship between the decision and the legislative intent expressed in G.S. section 53-172.

"[S]ubstantive due process denotes a standard of reasonableness and limits a state's exercise of its police power . . . . 'The traditional substantive due process test has been that a statute must have a rational relation to a valid state objective.' " *In re Petition of Kermit Smith,* 82 N.C. App. 107, 111, 345 S.E.2d 423, 425-26 (1986) (quoting *In re Moore,* 289 N.C. 95, 101, 221 S.E.2d 307, 311 (1976)).

BENEFICIAL NORTH CAROLINA v. STATE ex rel. BANKING COMM.

[126 N.C. App. 117 (1997)]

We first note the cases cited by BNCI apply this traditional substantive due process test to statutes and agency rules. However, BNCI does not challenge the validity of any statutes or rules. Rather, it contends the traditional substantive due process test should be applied to invalidate the Commission's adjudicatory decision. Without deciding whether this test applies to agency adjudicatory decisions, we conclude that, when this test is applied as requested by BNCI, the Commission's decision did not violate BNCI's substantive due process rights.

The Commission's decision, as supported by its findings and conclusions and by substantial record evidence, is rationally related to the G.S. section 53-172 goal of protecting the best interests of the borrowing public. The Commission's decision shows the Commission perceived that BNCI's proposed method of selling its LIPP insurance would likely result in the accumulation of unnecessary debt by its loan customers without presenting these persons a fair opportunity to make an informed choice regarding the purchase of LIPP. The concerns expressed in the decision focus directly on and are relevant to the best interests of the borrowing public. We find no substantive due process infirmities in the Commission's decision.

We note further that BNCI has not been deprived of a *right* to sell its LIPP insurance in conjunction with its CFA loan business. In G.S. section 53-172, the General Assembly has determined that there is no such right, and that, in fact, such other business is prohibited unless the Commissioner decides to authorize it. This does not mean that BNCI cannot sell LIPP at all. It simply may not do so in the same location where it conducts its CFA licensed loan business.

In its brief, BNCI also contends the Commission's decision violated its procedural due process rights. However, since BNCI has not presented any argument in support of this contention, it is deemed abandoned. See N.C.R. App. P. 28(b)(5) (1997); *In re Appeal from Environmental Management Comm.*, 80 N.C. App. 1, 18, 341 S.E.2d 588, 598, *disc. review denied*, 317 N.C. 334, 346 S.E.2d 139 (1986).

Finally, BNCI contends the Commission's decision was arbitrary and capricious. An arbitrary or capricious decision is one "without any rational basis in the record." *Abell v. Nash County Bd. of Education*, 71 N.C. App. 48, 52, 321 S.E.2d 502, 506 (1984), *disc. review denied*, 313 N.C. 506, 329 S.E.2d 389 (1985). The Commission's decision contains detailed findings of fact and conclusions of law which rationally support its denial of BNCI's application. In addition,

we find the Commission's decision supported by substantial evidence in the record. We hold the Commission's decision has a rational basis in the whole record and was not arbitrary or capricious.

The trial court did not err by upholding the Commission's decision.

Affirmed.

Judges JOHN and SMITH concur.