STATE OF NORTH CAROLINA ON RELATION OF THE BANKING COMMISSION AGAINST DOUGLAS WEISS

BLAINE WEISS, Petitioner v. NORTH CAROLINA COMISSIONER OF BANKS & NORTH CAROLINA BANKING COMMISSION, Respondents

No. COA04-1467

(Filed 18 October 2005)

## 1. Banks and Banking— mortgage loan officer licensure— grandfather provisions

The Banking Commission did not err by refusing appellants' loan officer license applications under the grandfather provisions of the Mortgage Lending Act. A plain language reading of the statute indicates that the grandfather clause exempts practicing loan officers from the required training only, not from additional statutory requirements.

## 2. Banks and Banking— mortgage loan officer licensure— responsibility for subordinate employee

There was no merit to the assertion that the Banking Commission erred by making applicants for licensure as mortgage loan officers responsible for the conduct of a subordinate employee. The Banking Commission's conclusions rely on findings supported by the record as to appellants' own actions and responses to consumer complaints.

**3. Banks and Banking— mortgage loan officer licensure— default judgment for unfair and deceptive practices—not conclusive**

The Banking Commission did not treat as conclusive a default judgment for unfair and deceptive practices against a mortgage company owned by the applicants for mortgage loan officer licensure. The Commission's findings indicate that the default judgment was treated as evidence of a claim which, coupled with other testimony, demonstrated a pattern of business operations.

**4. Banks and Banking— mortgage loan officer licensure— complaints—reliance on number, not validity**

The Banking Commission did not err when denying licenses for mortgage loan officers in its findings about the number of consumer complaints against a company owned by appellants. Testimony from the ombudsman in the Office of the Commissioner of Banks was from personal knowledge as to the number and not the validity of the complaints, and the Commission's findings were only to that effect.

**5. Banks and Banking— mortgage loan officer licensure—purpose—plain language of Act**

The Banking Commission relied on the plain language of the Mortgage Lending Act in determining its purpose, and did not rely on opinion testimony.

**6. Banks and Banking— mortgage loan officer licensure— findings—sufficiency of evidence**

Evidence in the whole record supported the Banking Commission's findings in denying mortgage loan officer licensure.

**7. Banks and Banking— mortgage loan officer licensure—failure to make certain findings**

The Banking Commission did not err by failing to make findings appellants contended could have been made in a case concerning mortgage loan officer licensure. The Commission properly considered the evidence in the whole record in making its findings.

**8. Banks and Banking— mortgage loan officer licensure— denial not arbitrary**

The Banking Commission's decision to deny mortgage loan officer licensure was not arbitrary or capricious where the Com-

mission made detailed findings and conclusions which rationally support the denial of appellants' applications.

**9. Banks and Banking— mortgage loan officer licensure— general counsel as prosecutor—due process**

Appellants alleged no bias or prejudice from the participation of the general counsel of the Office of Commissioner of Banks as the prosecutor in the proceeding in which they were denied mortgage loan officer licensure. As they allege no actual harm, no per se violation of due process may be found.

Appeal by petitioners from orders entered 6 August 2004 by Judge Orlando F. Hudson, Jr. in Wake County Superior Court. Heard in the Court of Appeals 11 May 2005.

*Smith, James, Rowlett & Cohen, L.L.P., by Norman B. Smith, for petitioner-appellants.*

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General L. McNeil Chestnut and Assistant Attorney General Anne J. Brown, for respondent-appellee.*

HUNTER, Judge.

Douglas Weiss ("Douglas") and Blaine Weiss ("Blaine") (collectively "appellants") appeal from orders affirming denials by the North Carolina State Banking Commission ("Banking Commission") of appellants' applications for licensure as mortgage loan officers entered 6 August 2004. As we find no error, we affirm the trial court's orders.

Appellants were the sole shareholders, directors, and officers of Superior Mortgage Company ("Superior"). Superior received numerous consumer complaints filed with the Office of the Commissioner of Banks ("OCOB"). Superior was found to have engaged in unfair and deceptive trade practices, and a default judgment was awarded against the company for failure to honor a refinancing agreement. In 2000, Superior surrendered its mortgage broker registration to the OCOB and filed for bankruptcy. Appellants then became employed as loan officers for a mortgage broker, United Home Mortgage ("United Home").

In 2001, legislation was enacted which required, for the first time, licensure by the OCOB of all mortgage brokers, bankers, and loan officers. This legislation, entitled the Mortgage Lending Act, became effective 1 July 2002.

On 9 September 2002, appellants each filed applications with OCOB for licensure as mortgage loan officers. Because of their previous experience in the industry, both appellants filed under the grandfather provision of an uncodified portion of the Mortgage Lending Act, enacted as 2001 N.C. Sess. Laws ch. 393, § 5(b). The OCOB denied both appellants' applications on 6 February 2003.

Appellants appealed the denial and the matters were heard before the Commissioner of Banks ("Commissioner") in June and July 2003. A Final Decision and Order was entered by the Commissioner on 8 September 2003, affirming the preliminary denials of the mortgage loan officer licenses.

Appellants appealed the Commissioner's Orders to the Banking Commission on 25 September 2003. An Appellate Panel, after review of the appeals, recommended to the Full Banking Commission that the Orders be affirmed. On 21 January 2004, the Banking Commission upheld the Final Decision and Orders.

Appellants filed for review of the Orders in superior court. On 6 August 2004, the superior court affirmed the decisions of the Banking Commission. Appellants now appeal to this Court. We note that where appellants raise identical issues, we address those assignments of error together.

Before addressing the merits of appellants' claims, we first note the applicable standard of review. The proper manner of review of a final agency decision "depends upon the particular issues presented on appeal." *Amanini v. N.C. Dept. of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994). Our statutes provide that a reviewing trial court may

> reverse or modify the agency's decision, or adopt the administrative law judge's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;

STATE EX REL. BANKING COMM'N v. WEISS

[174 N.C. App. 78 (2005)]

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b) (2003). *De novo* review is proper when the issue raised is whether an agency decision was based on an error of law. *Beneficial North Carolina v. State ex rel. Banking Comm.*, 126 N.C. App. 117, 122, 484 S.E.2d 808, 811 (1997). However, when the appellant challenges "(1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the 'whole record' test." *In re Appeal by McCrary*, 112 N.C. App. 161, 165, 435 S.E.2d 359, 363 (1993). "The 'whole record' test 'requires the reviewing court to examine all competent evidence (the "whole record") in order to determine whether the agency decision is supported by "substantial evidence." ' " *Beneficial*, 126 N.C. App. at 122, 484 S.E.2d at 811 (citation omitted).

"The standard of review for an appellate court when reviewing a superior court order affirming or reversing a decision of an administrative agency requires the appellate court to examine 'the trial court's order for error of law' just as in any other civil case." *Beneficial*, 126 N.C. App. at 123, 484 S.E.2d at 811 (quoting *ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997)). " 'The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.' " *ACT-UP Triangle*, 345 N.C. at 706, 483 S.E.2d at 392 (citation omitted). However, our Supreme Court has recently affirmed that:

[I]n cases appealed from an administrative tribunal under the APA, it is well settled that the trial court's erroneous application of the standard of review does not automatically necessitate remand, provided the appellate court can reasonably determine from the record whether the petitioner's asserted grounds for challenging the agency's final decision warrant reversal or modification of that decision under the applicable provisions of N.C.G.S. § 150B-51(b).

*N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 665, 599 S.E.2d 888, 898 (2004).

**STATE ex rel. BANKING COMM'N v. WEISS**

[174 N.C. App. 78 (2005)]

I.

**[1]** Appellants first contend the Banking Commission erred in not granting appellants' loan officer license applications under the grandfather provisions of the Mortgage Lending Act. As this assignment raises an error of law, we review the issue *de novo* and find no error.

Appellants' contention raises a question of first impression for this Court. We therefore carefully examine the statutes which govern such licensure. In interpreting our state statutes, "the primary function of this Court is to 'ensure that the purpose of the Legislature in enacting the law, sometimes referred to as legislative intent, is accomplished.' To determine legislative intent, we examine the language and purpose of the statute." *Albemarle Mental Health Ctr. v. N.C. Dep't of Health & Human Servs.*, 159 N.C. App. 66, 68, 582 S.E.2d 651, 653 (2003) (citations omitted). " 'Statutory interpretation properly begins with an examination of the plain words of the statute.' 'If the language of the statute is clear and is not ambiguous, we must conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms.' " *Three Guys Real Estate v. Harnett County*, 345 N.C. 468, 472, 480 S.E.2d 681, 683 (1997) (citations omitted).

The Mortgage Lending Act, N.C. Gen. Stat. Ch. 53, Art. 19A (2003), requires a loan officer license for any individual who "engage[s] in the solicitation and acceptance of applications for mortgage loans[.]" N.C. Gen. Stat. § 53-243.02(b) (2003). Such a licence is only effective when the loan officer is employed by a licensed mortgage broker or mortgage banker. N.C. Gen. Stat. § 53-243.02(c).

Qualifications for licensure as a mortgage broker, mortgage banker, or loan officer are set out in section 53-243.05. The statute requires, among other information:

(4) The qualifications and business history of the applicant and, if applicable, the business history of any partner, officer, or director, any person occupying a similar status or performing similar functions, or any person directly or indirectly controlling the applicant, including: (i) a description of any injunction or administrative order by any state or federal authority to which the person is or has been subject; (ii) a conviction of a misdemeanor involving fraudulent dealings or moral turpitude or relating to any aspect of the residential mortgage lending business; (iii) any felony convictions.

(5) With respect to an application for licensing as a mortgage banker or broker, the applicant's financial condition, credit history, and business history; and with respect to the application for licensing as a loan officer, the applicant's credit history and business history.

(6) The applicant's consent to a criminal history record check and a set of the applicant's fingerprints in a form acceptable to the Commissioner. Refusal to consent to a criminal history record check may constitute grounds for the Commissioner to deny licensure to the applicant.

N.C. Gen. Stat. § 53-243.05(a)(4-6) (2003). The statute then specifically requires that loan officer applicants be at least eighteen years of age and have "satisfactorily completed, within the three years immediately preceding the date application is made, a mortgage lending fundamentals course approved by the Commissioner." N.C. Gen. Stat. § 53-243.05(b)(1-2).

However, 2001 N.C. Sess. Laws ch. 393 includes a grandfather provision governing individuals already employed in the mortgage lending business. 2001 N.C. Sess. Laws ch. 393, § 5(b) states:

**(b)** Any qualified person who files, within 90 days after this act becomes effective, a sworn application with the Commissioner stating that he or she has met the definition of a qualified person under G.S. 53-243.01(18), enacted by Section 2 of this act, including a statement that he or she has not been convicted of any felony or any misdemeanor involving moral turpitude, shall be issued a license as a loan officer from the Commissioner without having to meet the training requirements for licensure under G.S. 53-243.05(b), enacted by Section 2 of this act.

*Id.* "Qualified person" is defined in N.C. Gen. Stat. § 53-243.01(18) (2003) as:

A person who is employed as a loan officer by a qualified lender, or by a mortgage banker or broker registered with the Commissioner under former Article 19 of this Chapter, or who is a general partner, manager, or officer of a qualified lender, registered mortgage banker, or registered mortgage broker.

*Id.*

Appellants here contend that, as they were employed as loan officers, met the definition of qualified person, and filed within the

required ninety days, the OCOB was required to issue them a loan officer license under 2001 N.C. Sess. Laws ch. 393, § 5(b). However, a plain language reading of 2001 N.C. Sess. Laws ch. 393, § 5(b) indicates that the grandfather clause exempts practicing loan officers only from the required training, not from the additional statutory requirements. The grandfather clause specifically states that such an applicant "shall be issued a license . . . without having to meet the *training requirements for licensure under G.S. 53-243.05(b)*[.]" *Id.* (emphasis added). Applicants are not relieved of the requirements of the remainder of § 53-243.05 discussed *supra.* Further, section 53-243.05(i) specifically states that:

> (i) If the Commissioner determines that an applicant meets the qualifications for licensure and finds that the financial responsibility, character, and general fitness of the applicant are such as to command the confidence of the community and to warrant belief that the business will be operated honestly and fairly, the Commissioner shall issue a license to the applicant.

N.C. Gen. Stat. § 53-243.05(i). Therefore, when read as a whole, the plain language of the statute indicates that the grandfather clause provision was intended to exempt practicing loan officers only from the three-year training requirement at the time of licensure, not to automatically grant licenses to all current loan officers, including those whose qualifications would not "warrant belief that the business will be operated honestly and fairly[.]" *Id.* We affirm the trial court's conclusion that the statute does not exempt appellants from the statutory requirements other than training, and that the Banking Commission therefore did not err in applying the governing statute.

II.

**[2]** Appellants next contend the Banking Commission erred in making appellants, as corporate officers, personally responsible for conduct of a subordinate employee. We disagree.

Appellants specifically refer to findings made regarding transactions conducted by one of Superior's employees, Michael D. Edwards ("Edwards"), which resulted in a judgment against Superior. The Banking Commission found as to Blaine that:

12. Superior engaged in business dealings with Peter Pike and his wife Heather, including false and misleading representations by Edwards on behalf of Superior, that were found by the Superior Court of Alamance County to be unfair and decep-

tive trade practices, resulting in an award of treble damages against Superior.

13. Although Appellant testified that he would have terminated Edwards for his conduct towards the Pikes[], there is no evidence that he took any such action. Further, there is no evidence that Appellant took any steps to address the Pikes' complaint or to supervise Edwards' conduct in any meaningful way prior to the time of such complaint.

. . .

16. Superior had no code of ethics or conduct and does not appear to have had any system of oversight or controls to ensure compliance with law and fair treatment of customers. There is no evidence that Superior took any steps to correct its obvious deficiencies with regards to the payment of appraisers or closing shortages.

The Banking Commission made similar findings as to Douglas and concluded, in part based on the findings set out above, that appellants failed to meet the statutory standard required for licensure, that is "that the financial responsibility, character, and general fitness of the applicant are such as to command the confidence of the community and to warrant belief that the business will be operated honestly and fairly." Specifically, the Banking Commission concluded as to both applicants that:

Appellant's actions and omissions as [officer], shareholder and *de facto* general partner in Superior show a reckless disregard for the fair treatment of customers and compliance with applicable law and ethical business practices. Appellant's management of Superior and his testimony in this matter do not show an appreciation for the needs of customers or the demands of the law. On the basis of the record, Appellant does not have the character, competence or financial responsibility to conduct business as a loan officer or any other position in the mortgage lending industry.

Appellants' contention that the Banking Commission held appellants liable for the actions of a corporate agent when they did not directly participate in the wrongdoing themselves is not supported by the record. The Banking Commission's denials of licensure clearly state that the basis for its conclusions that appellants lacked "character [and] competence" were based on appellants' own failure to

STATE EX REL. BANKING COMM'N v. WEISS

[174 N.C. App. 78 (2005)]

address consumer complaints and ensure fair and ethical treatment of consumers, and further that appellants lacked "financial responsibility" based on appellants' own actions in failing to show financial responsibility by not correcting deficiencies in payments to appraisers. Thus as the Banking Commission's conclusions rely on findings supported by the record as to appellants' own actions and responses to consumer complaints against the business of which they were the sole shareholders, directors, and officers, we find appellants' second assignment of error without merit.

## III.

[3] Appellants next contend the Banking Commission erred in treating as conclusive a default judgment against Superior where unfair and deceptive practices were found. We disagree.

The Commission found, as set out *supra* in Findings 12 and 13, that Superior had engaged in false and misleading representation to Peter and Heather Pike, and that the Superior Court of Alamance County found these representations to be unfair and deceptive trade practices. Appellants contend that the Commission improperly found unfair trade practices had been committed by relying on the trial court's findings in the default judgment.

After a careful review of the Commission's order, we find no evidence that the Commission relied on the default judgment to conclusively establish unfair and deceptive trade practices. Rather, the record shows that independent evidence was offered by Peter Pike as to the unfair representations made by Superior regarding the mortgage transaction, and to the entry of a default judgment by the trial court after appellants failed to respond to the action. Testimony by Douglas also supports the Banking Commission's finding regarding the judgment. In his testimony before the Banking Commission, Douglas stated that the Pike transaction had been improperly handled, and that as an officer of the company he took responsibility for that error. The Commission's findings reflect this independent evidence, stating:

13. ... Appellant did not present any evidence that the Pike claim was not justified or that the conduct of Superior personnel was ethical or appropriate in the circumstances. The Pike claim was the result of Superior's method of business operations for which Appellant was jointly responsible, and that claim was the probable consequence of such business operations.

Therefore, the findings indicate that the Commission did not treat the default judgment as factually binding, but rather as evidence of a claim which, coupled with the testimony of Pike and Douglas, demonstrated a pattern of business operations regarding false and misleading representations. The Commission, therefore, did not improperly rely on the default judgment.

## IV.

**[4]** Appellants next contend the Banking Commission erred in finding validity in consumer complaints against Superior by reason of their large number. We disagree.

With regards to consumer complaints, the Banking Commission found:

> 9. Superior was the subject of numerous consumer and appraiser complaints, characterized by witness George King of OCOB as, "Exceedingly high." . . . The twenty-nine complaints presented in this matter included non-payment of appraisers, misleading solicitation of business, and the allegations of the Pikes and Mussons referred to below.

> 10. Appellant did not deny the existence of the complaints against Superior[.]

Appellants correctly contend that under the North Carolina Rules of Evidence, lay witness testimony is limited to opinions rationally based on the perception of the witness. N.C. Gen. Stat. § 8C-1, Rule 701 (2003). Here, George King ("King") testified that during the period he was ombudsman for OCOB, twenty-nine complaints over a period of three and a half years were received regarding Superior's services, and that such a number was exceedingly high in comparison with other mortgage brokers. As King testified from personal knowledge as to the number, and not as to the validity of complaints received, and the Banking Commission made findings only to that effect, we find appellants' assignment of error is without merit.

## V.

**[5]** Appellants next contend the Banking Commission erred in making findings on the basis of opinion evidence as to the purpose of legislation. We disagree.

The Banking Commission found:

> 22. On the basis of his involvement with Superior, George King of OCOB offered the opinion that the business practices of

Superior were the kind of practices that resulted in the enactment of the Mortgage Lending Act, as was an intention by the General Assembly to keep people like Appellant and his brother out of the mortgage lending business.

Appellant contends the Banking Commission erred in making such a finding as "[t]estimony, even by members of the Legislature which adopted the statute, as to its purpose and the construction intended to be given by the Legislature to its terms, is not competent evidence upon which the court can make its determination as to the meaning of the statutory provision." *Milk Commission v. Food Stores*, 270 N.C. 323, 332-33, 154 S.E.2d 548, 555 (1967).

Here, however, the Banking Commission's conclusions as to the purposes of the Mortgage Lending Act are based on the language of the statute, rather than on King's opinion. The Banking Commission concluded:

6. It is important to note that the Mortgage Lending Act was enacted to address numerous fraudulent and unethical practices in the mortgage lending industry, including the making of false or misleading statements, failure properly to apply loan proceeds, and failure promptly to pay appraisers. N.C. Gen. Stat. § 53-243.11. The record in this matter is replete with examples of the kind of conduct the Mortgage Lending Act is intended to prevent.

As the Banking Commission did not rely on the opinion testimony of King, but rather on the plain language of the statute itself in determining the purpose of the Mortgage Lending Act, we find the Banking Commission did not err in its findings of King's opinion.

VI.

[6] Appellants next contend the Banking Commission erred in making findings of fact not based on competent, material, and substantial evidence. We disagree.

As noted above, a challenge as to whether an agency's decision was supported by the evidence requires review of all competent evidence, i.e. the "whole record," in order to determine whether the agency decision is supported by substantial evidence. *Beneficial*, 126 N.C. App. at 122, 484 S.E.2d at 811.

A careful review of the whole record in this case reveals that substantial evidence supported the challenged findings. Blaine first chal-

lenges Finding of Fact 12 for the reasons stated *supra* in Section II of this opinion. As discussed in that section, sufficient evidence was presented to support the Banking Commission's finding.

Blaine next challenges Finding of Fact 13, set out *supra*. A review of the record reveals no evidence was presented that appellant took any action towards Edwards for his improper actions in the Pike transaction. The Banking Commission's finding is therefore supported.

Blaine finally challenges Finding of Fact 18: "Appellant did not introduce evidence that such advances approximated what he had taken out of the firm while it was in operation." Appellant contends there was no basis for requiring such advances to be equal. However, ample evidence was presented that both appellants used company resources to purchase personal items unrelated to the business in excess of $100,000.00, and that unsatisfied debts remained after Superior filed for bankruptcy. Therefore substantial evidence supported the finding.

Douglas first challenges Finding of Fact 11, that "[a]ppellant knew, or in the exercise of reasonable care should have known, of Superior's non-payment of appraisers and pay-off shortages and did nothing to deal with either matter." Appellant's own testimony established that he was the Vice-President, Secretary, and Treasurer of Superior, and ample evidence was presented that appraisers were not paid and pay-off shortages were unremedied for varying lengths of time by Superior. As there is sufficient evidence in the record, the Banking Commission did not err in this finding.

Douglas next challenges Finding of Fact 14, regarding the Mussons' transaction. Finding of Fact 14 states in part:

(i) the Mussons' were solicited by means of a mailer that was at best misleading; (ii) representations were made to the Mussons' regarding the structure of the proposed refinancing that were false and misleading; (iii) the HUD closing statements prepared in respect of the refinancing were materially incorrect; (iv) there was a material shortage with regard to one of the two loans to be refinanced that resulted in the Mussons' being obligated for three loans and (v) even if competently completed, the transaction did not result in any material new benefit to the Mussons.

Evidence in the record supports all of the Banking Commission's findings as to the Musson transaction, and further, Douglas himself testi-

fied before the Banking Commission that the loan was mishandled. Therefore the Banking Commission did not err in this finding.

Finally, Douglas contends that the Banking Commission erred in Finding of Fact 22 regarding his testimony as to his wife's occupation, which the Banking Commission found showed "a wanton indifference to the truthfulness of sworn testimony." A review of Douglas's testimony in this matter supports the finding. Douglas stated under oath that his wife was not employed outside the home and had no special skills, then retracted his testimony when confronted with evidence that his wife was a licensed mortgage loan officer employed by United Home. The Banking Commission therefore did not err in this finding.

As a review of the whole record reveals substantial evidence supporting the findings, we find no merit to appellants' assignment of error.

## VII.

[7] Appellants next contend the Banking Commission erred in failing to make findings of fact required by the evidence. Appellants argue that additional findings could have been made from evidence presented to the Banking Commission. We disagree.

Our Supreme Court has previously addressed the issue of the role of the administrative agency in making findings of fact.

North Carolina is in accord with the well-established rule that it is for the administrative body, in an adjudicatory proceeding, to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence. The credibility of witnesses and the probative value of particular testimony are for the administrative body to determine, and it may accept or reject in whole or part the testimony of any witness.

*Comr. of Insurance v. Rate Bureau*, 300 N.C. 381, 406, 269 S.E.2d 547, 565 (1980) (citations omitted). Here, a review of the evidence and findings of fact demonstrates that the Banking Commission properly considered the evidence in the whole record in making the findings of fact. Appellants' contention is therefore without merit.

## VIII.

**[8]** Appellants next contend the Banking Commission erred in acting arbitrarily and capriciously in denying appellants' license applications. We disagree.

"An arbitrary or capricious decision is one 'without any rational basis in the record.' " *Beneficial*, 126 N.C. App. at 128, 484 S.E.2d at 814-15 (citation omitted). Here, the Banking Commission made detailed findings of fact and conclusions of law as to both appellants which rationally support the denial of appellants' applications. The Banking Commission specifically considered appellants' past actions in the mortgage lending industry in arriving at its conclusion that appellants failed to meet the statutory requirements for licensure. Further, as discussed *supra*, substantial evidence supported the Banking Commission's findings. Therefore, we find the Banking Commission's decision has a rational basis in the record and was not arbitrary or capricious.

## IX.

**[9]** Douglas finally contends the Banking Commission erred in denying his motion for rehearing and appointment of independent counsel. Douglas argues that as the prosecutor in this proceeding, L. McNeil Chestnut ("Chestnut"), a Special Deputy Attorney General, is also general counsel to the OCOB, an impermissible appearance of impartiality was created. We disagree.

In *Dorsey v. UNC-Wilmington*, 122 N.C. App. 58, 468 S.E.2d 557 (1996), this Court held that:

> Under G.S. § 114-2(2), it is the duty of this State's Attorney General "[t]o represent all State departments, agencies, institutions, commissions, bureaus or other organized activities of the State which receive support in whole or in part from the State." . . . In similar circumstances, we have held that no *per se* violation of due process arises from such a combination of advisory function and advocacy function in the absence of a showing of actual bias or unfair prejudice.

*Id.* at 66-67, 468 S.E.2d at 562.

Here, appellants do not contend that they suffered actual bias or prejudice as a result of Chestnut's involvement as prosecutor, merely alleging that the appearance created the harm of an unbiased deci-

sion maker. As appellants allege no actual harm, no *per se* violation of due process may be found.

After a careful review of the record, we find no error of law and affirm the trial court's order affirming the Final Agency Decision of the Banking Commission.

Affirmed.

Judges HUDSON and GEER concur.