CHRYSLER FINANCIAL COMPANY L.L.C., SUCCESSOR BY MERGER TO CHRYSLER FINANCIAL CORPORATION, PLAINTIFF v. MURIEL K. OFFERMAN, IN HER OFFICIAL CAPACITY AS THE SECRETARY OF THE DEPARTMENT OF REVENUE OF THE STATE OF NORTH CAROLINA, DEFENDANT

No. COA99-823

(Filed 6 June 2000)

## 1. Taxation— privilege—dealing in installment paper—intent to profit immaterial

Although the trial court did not err by granting summary judgment for Chrysler Financial on a claim for refund of privilege taxes assessed against its wholesale financing business, Chrysler Financial was engaged in the business of dealing in installment paper under the plain meaning of N.C.G.S. § 105-83; it is immaterial whether Chrysler Financial's engagement in this business was intended for or resulted in making a profit.

CHRYSLER FIN. CO. v. OFFERMAN

[138 N.C. App. 268 (2000)]

**2. Taxation— privilege—wholesale automobile financing—activity not in North Carolina**

The trial court did not err by granting summary judgment for Chrysler Financial in an action for a refund of privilege taxes assessed against its wholesale financing business under N.C.G.S. § 105-83. The agreement with Chrysler Corporation to purchase installment paper was executed in Michigan and the buying and selling of the paper takes place entirely in Michigan. Other activities such as the perfection of a security interest in North Carolina do not arise in the course of the buying or selling of the credit sale agreement or have no relation to the buying or selling of the installment paper.

Appeal by defendant from order filed 19 February 1999 by Judge Marcus L. Johnson in Mecklenburg County Superior Court. Heard in the Court of Appeals 18 April 2000.

*Bell, Davis & Pitt, P.A., by William Kearns Davis, Walter W. Pitt, Jr., and D. Anderson Carmen, for plaintiff-appellee.*

*Attorney General Michael F. Easley, by Assistant Attorneys General, Christopher E. Allen, Marilyn R. Mudge, and Kay Linn Miller Hobart, for the defendant-appellant.*

GREENE, Judge.

Muriel K. Offerman, in her official capacity as the Secretary of the Department of Revenue of the State of North Carolina (the Department of Revenue) appeals an order filed 19 February 1999 granting summary judgment in favor of Chrysler Financial Company, L.L.C., Successor by Merger to Chrysler Financial Corporation (Chrysler Financial) and denying the Department of Revenue's motion for summary judgment.

The undisputed facts show that in 1984 Chrysler Financial, a Michigan limited liability company, began engaging in a procedure for providing automobile dealerships in North Carolina with wholesale financing (the Wholesale Finance Plan).[1] The procedure for receiving

---

1. In an affidavit dated 13 January 1999, R. J. Kippert, Jr. (Kippert), staff tax counsel for Chrysler Financial, stated the Wholesale Finance Plan was begun in 1984 for the purpose of Chrysler Corporation obtaining tax benefits available under the Internal Revenue Code. Kippert stated the structure of the Wholesale Finance Plan allows Chrysler Corporation to "defer recognition of the income for gain on the sale of a vehicle" for 40 days after the retail sale of the vehicle, rather than recognizing this gain when Chrysler Corporation receives payment from Chrysler Financial for the vehicle.

financing under the Wholesale Finance Plan begins when dealerships that want to finance the sale of Chrysler vehicles through Chrysler Financial apply for a line of credit with Chrysler Financial. Once a line of credit has been established, the dealership receives vehicles for retail sale from Chrysler Corporation, a Delaware corporation that manufactures vehicles in Michigan. Upon placement of a vehicle for shipment from Chrysler Corporation to the dealership, the dealership and Chrysler Corporation execute a credit sale agreement (installment paper). The credit sale agreement is executed by the dealership in Michigan through an attorney-in-fact, and the sale of the vehicle occurs in Michigan. Upon the execution of the credit sale agreement, the dealership obtains rights in the vehicle and Chrysler Corporation obtains a security interest in the vehicle and the dealership's inventory. Under the terms of the credit sale agreement, Chrysler Corporation has "the right of access to and inspection of the [v]ehicles and the right to examine [the dealership's] books and records, . . . [and the dealership] . . . certifies to [Chrysler Corporation] that all [v]ehicles and books and records shall be kept at the principal place of business of [the dealership]."

As part of the Wholesale Finance Plan, Chrysler Financial then enters into an "Agreement to Purchase Wholesale Credit Obligations" with Chrysler Corporation. Execution of this agreement takes place in Michigan and, pursuant to this agreement, Chrysler Corporation assigns to Chrysler Financial its rights under the credit sale agreement. Additionally, Chrysler Financial pays Chrysler Corporation 100% of the amount due for each vehicle under the credit sale agreement.

A financing statement naming Chrysler Corporation as the secured party and Chrysler Financial as the assignee is then filed in North Carolina pursuant to section 25-9-401 of the North Carolina Uniform Commercial Code. This filing perfects Chrysler Financial's security interest in the vehicles purchased from Chrysler Corporation and in the dealership's inventory. Upon the retail sale of a vehicle by the dealership, the dealership remits to Chrysler Financial 100% of the amount advanced by Chrysler Financial to Chrysler Corporation for the wholesale purchase of the vehicle. If the dealership fails to pay funds due under the credit sale agreement, Chrysler Financial has the right to enforce the payment of these funds through collection procedures in North Carolina.

On 30 July 1993, the Department of Revenue assessed Chrysler Financial taxes, interest, and penalties for transactions made under

its Wholesale Finance Plan with dealerships located in North Carolina, pursuant to N.C. Gen. Stat. § 105-83.[2] The 30 July 1993 assessments were for the following amounts: $3,156,823.00 for the period of 1 October 1986 through 30 September 1989, and $5,327,316.00 for the period of 1 October 1989 through 31 March 1993. Subsequent to the 30 July 1993 assessment, the Department of Revenue continued to assess Chrysler Financial taxes due based on the Wholesale Finance Plan, and on 28 July 1994, 6 September 1995, 19 October 1995, 4 January 1996, 15 April 1996, 15 July 1996, 10 October 1996, 17 January 1997, 10 April 1997, and July 2 1997, Chrysler Financial made payments to the Department of Revenue totaling $16,329,154.59 based on these assessments. Chrysler Financial made these payments under protest pursuant to N.C. Gen. Stat. § 105-267, and Chrysler Financial demanded a refund of each payment within thirty days of making the payment.[3]

On 12 September 1997, Chrysler Financial brought suit against the Department of Revenue, alleging a claim for refund of taxes in the amount of $16,329,154.59 on the ground "[a]ll taxes assessed by the Department of Revenue pursuant to N.C. Gen. Stat. § 105-83 and paid by Chrysler Financial which result from Chrysler Financial's wholesale financing business . . . were levied and assessed for an illegal or unauthorized purpose, or were invalid or excessive." The complaint alleged the following pertinent grounds for relief:

b. Chrysler Financial is not engaged in the business of dealing in, buying, or discounting installment paper, notes, bonds, contracts, or evidences of debt in connection with its wholesale financing of automobiles within the meaning of N.C. Gen. Stat. § 105-83;

c. Chrysler Financial's provision of wholesale financing is a direct loan to automobile dealers that takes the form of either a cash advance to the dealer or to Chrysler [Corporation] as the manufacturer of vehicles sold to dealers, both of which are done pursuant to existing loan and security agreements, and such activity is not within the scope of N.C. Gen. Stat. § 105-83;

. . . .

---

2. N.C. Gen. Stat. § 105-83 was amended by Session Laws 1998-95, s.9, effective 1 July 1999. The taxes at issue in this case, however, were assessed prior to the effective date of the amendment.

3. The parties do not dispute Chrysler Financial engages in *retail* financing in North Carolina, is licensed pursuant to section 105-83 to conduct such retail financing, and has been assessed and has paid taxes under section 105-83 based on its retail financing business since 1967.

e. N.C. Gen. Stat. § 105-83 requires a taxpayer to obtain a license and pay a tax for the privilege of engaging in the business described therein in the State of North Carolina. By its terms, the statute requires that both the assignment of a receivable take place in North Carolina and that a lien be reserved or taken upon property located in North Carolina. In Chrysler Financial's wholesale financing business, neither the assignment of a receivable from Chrysler [Corporation] to Chrysler Financial nor the reservation or taking of a lien on any property occurs in North Carolina[.]

On 15 January 1999, Chrysler Financial filed a motion for summary judgment, and on 25 January 1999, the Department of Revenue filed a motion for summary judgment. In an order filed 19 February 1999, the trial court denied the Department of Revenue's motion for summary judgment and granted summary judgment in favor of Chrysler Financial in the amount of $14,784,559.29, plus 8% interest per annum.

---

The issues are whether: (I) Chrysler Financial is "engaged in the business of dealing in . . . installment paper" within the meaning of N.C. Gen. Stat. § 105-83 and, if so; (II) Chrysler Financial engaged in this business in the State of North Carolina within the meaning of N.C. Gen. Stat. § 105-83.

N.C. Gen. Stat. § 105-83 provides:

(a) Every person engaged in the business of dealing in, buying, or discounting installment paper . . . where at the time of or in connection with the execution of said instruments, a lien is reserved or taken upon personal property located in this State to secure the payment of such obligations, shall apply for and obtain from the Secretary a State license for the privilege of engaging in such business or for the purchasing of such obligations in this State, and shall pay for such license an annual tax of one hundred dollars ($100.00).

(b) In addition to obtaining a State license from the Secretary, each person subject to the tax levied in subsection (a) . . . shall pay a tax of two hundred and seventy-five thousandths of one percent (.275%) of the face value of these obligations.

N.C.G.S. § 105-83(a), (b) (1997). This statute creates a privilege tax which is assessed to taxpayers for the privilege of carrying on a particular business in North Carolina. N.C.G.S. § 105-33 (1999).

I

[1] Chrysler Financial argues it is not "engaged in the business of dealing in . . . installment paper" because it purchases credit sale agreements from Chrysler Corporation in order to provide dealerships with financing under the Wholesale Finance Plan and not for the purpose of making a profit. We disagree.

Section 105-83 does not define the phrase "dealing in . . . installment paper," and we must, therefore, ascertain the meaning of this phrase by looking to the plain meaning of the terms. *State v. Raines*, 319 N.C. 258, 262, 354 S.E.2d 486, 489 (1987). The plain meaning of "deal in" is "to engage in buying and selling some commodity." *New Webster's Dictionary and Thesaurus of the English Language* 247 (1992). "Dealing in . . . installment paper," therefore, means the buying and selling of installment paper, and a taxpayer may "deal in" installment paper regardless of whether such dealing is intended for or results in the taxpayer receiving a profit.

In this case, Chrysler Financial entered into the "Agreement to Purchase Wholesale Credit Obligations" from Chrysler Corporation. Upon execution of this Agreement, Chrysler Corporation assigned to Chrysler Financial its security interest in the installment paper representing the sale of the vehicles to the dealerships and Chrysler Financial paid Chrysler Corporation the amount due under the installment paper. Chrysler Financial is therefore "engaged in the business of dealing in . . . installment paper" under the plain meaning of section 105-83, and it is immaterial whether Chrysler Financial's engagement in this business was intended for or resulted in it making a profit.

II

[2] Chrysler Financial also argues that even if it does "engage in the business of dealing in . . . installment paper," it is not subject to a tax assessment under section 105-83 because section 105-83 taxes only the actual sale of the installment paper and this sale takes place entirely within Michigan. In contrast, the Department of Revenue argues section 105-83 applies not to the actual sale of the installment paper but to the entire range of activities involved in the business of engaging in such sales, and a tax may be assessed if "any part of the activity related to the prosecution of that business occurs in North Carolina." Specifically, the Department of Revenue contends Chrysler Financial engages in the following activities in North Carolina related

to the prosecution of the wholesale installment paper business: Chrysler Financial's security interest in the vehicles and inventories of the dealerships is perfected in North Carolina; Chrysler Financial may pursue collection of funds due under the credit sale agreement in North Carolina; the credit sale agreement provides Chrysler Financial with the right to inspect collateral and records located in North Carolina; dealerships in North Carolina use North Carolina funds to pay amounts due under the credit sale agreement; and Chrysler Financial engages in the dealing of installment paper based on retail business in North Carolina and is licensed pursuant to section 105-83 for that purpose.

Section 105-83 states "[e]very person engaged in the business of dealing in . . . installment paper . . . shall apply for and obtain from the Secretary of State a State license for the privilege of engaging in such business . . . *in this State.*" N.C.G.S. § 105-83(a). Under the plain language of the statute, a tax is to be assessed for engaging in the business of dealing in installment paper in North Carolina. As noted above, "dealing in . . . installment paper" means the buying and selling of installment paper.

In an administrative rule interpreting section 105-83, the Department of Revenue has stated:

> G.S. 105-83 does not impose a tax on the business of dealing in, buying and/or discounting installment paper which is engaged in exclusively in a foreign state. When any of the activity *incident to such business* occurs in North Carolina, G.S. 105-83 applies. Such activities include the promotion and solicitation of such business by employees or agents within this State, whether or not the transfer of such paper is consummated in this State.

N.C. Admin. Code tit. 17, r. 4B.2905 (June 1998) (emphasis added). "[A]n administrative agency's interpretation of its own regulation is to be given due deference by the courts unless it is plainly erroneous or inconsistent with the regulation." *Pamlico Marine Co., Inc. v. N.C. Depart. of Natural Resources,* 80 N.C. App. 201, 206, 341 S.E.2d 108, 112 (1986). We agree Rule 4B.2905 is consistent with the meaning of section 105-83, and we therefore consider the application of this Rule to the facts of this case. It is clear under Rule 4B.2905 that a taxpayer must conduct *some* activity in North Carolina to be assessed a tax under section 105-83. Additionally, the activity required to assess a tax under section 105-83 is not limited to the actual transfer of the installment paper, but may be activity "incident to such business."

Nevertheless, because Rule 4B.2905 limits the application of section 105-83 to activities incident to the business of "dealing in . . . installment paper," the activities must be incident to the buying and selling of installment paper. An activity is "incident to" the buying and selling of installment paper if it "arise[s] in the course of" the buying and selling. *New Webster's Dictionary and Thesaurus of the English Language* 489 (1992). These incidental activities may include, but are not limited to, "the promotion and solicitation of such business." N.C. Admin. Code tit. 17, r. 4B.2905.

In this case, Chrysler Financial entered into an agreement with Chrysler Corporation to purchase installment paper, and this agreement was executed in Michigan. The buying and selling of this installment paper takes place entirely within Michigan; therefore, Chrysler Financial may not be assessed a tax under section 105-83 based directly on its purchase of installment paper. We must, therefore, determine whether Chrysler Financial conducted any activities in North Carolina incident to the buying and selling of the installment paper. Pursuant to the agreement to purchase the installment paper, Chrysler Corporation assigned to Chrysler Financial its security interest in vehicles owned by dealerships in North Carolina and those dealerships' inventories. This security interest was perfected by the filing of a financing statement in North Carolina, and these documents named Chrysler Financial as an assignee. The perfection of a security interest in North Carolina, however, does not arise in the course of the buying or selling of the credit sale agreement. Rather, this perfection of a security interest is an act separate and apart from the purchase of installment paper. Additionally, Chrysler Financial's right to inspect collateral under the credit sale agreement does not arise in the course of buying or selling the credit sale agreement, but is a contractual right Chrysler Financial obtains in Michigan when Chrysler Corporation assigns to Chrysler Financial the credit sale agreement. Similarly, enforcement of this contractual right in North Carolina by collection methods permitted in this State does not arise in the course of buying or selling the credit sale agreement. Further, the fact that dealerships in North Carolina use their funds to pay amounts due under the credit sale agreements has no relation to the buying or selling of the installment paper by Chrysler Financial, and Chrysler Financial's retail installment paper business in North Carolina has no relation to its wholesale installment paper business. Finally, the record contains no evidence Chrysler Financial engages in the promotion or solicitation of the buying or selling of installment paper in North Carolina. Chrysler Financial, therefore, was not sub-

FARR ASSOCS. v. BASKIN

[138 N.C. App. 276 (2000)]

ject to tax assessment under section 105-83 based on its purchase of installment paper from Chrysler Corporation.

Because we hold Chrysler Financial was not subject to tax assessment under section 105-83 for its wholesale installment paper business, we need not address the Department of Revenue's additional assignments of error. Accordingly, the trial court's order denying the Department of Revenue's motion for summary judgment and granting summary judgment in favor of Chrysler Financial is affirmed.

Affirmed.

Judges McGEE and EDMUNDS concur.