NAVISTAR FINANCIAL CORPORATION, Plaintiff/Appellant v. E. NORRIS TOLSON, in his official capacity as the SECRETARY OF THE DEPARTMENT OF REVENUE OF THE STATE OF NORTH CAROLINA, Defendant/Appellee

No. COA05-352

(Filed 21 February 2006)

### 1. Taxation— wholesale and retail financing business—liens on property in North Carolina

There is no distinction in the statute imposing a tax on installment paper dealers, N.C.G.S. § 105-83, as to whether a business is of the wholesale, retail or hybrid variety, and the statute was applicable to a wholesale and retail business which engaged in the business of buying installment paper reserving liens on property located in North Carolina. Summary judgment was properly granted for defendant.

### 2. Taxation— installment notes with liens on North Carolina property—due process

Plaintiff has the substantial connections necessary for the State to legitimately levy taxes upon its business and the application of N.C.G.S. § 105-83 did not violate the Due Process Clause

of the Fourteenth Amendment. The activity being taxed is not the transfer of promissory notes, but the business of dealing in installment paper for which liens are reserved upon personal property located in North Carolina.

**3. Taxation— wholesale and retail financing—Commerce Clause—no violation**

N.C.G.S. § 105-83 does not violate the Commerce Clause of the United States Constitution. A state tax will be sustained as constitutional so long as the tax is applied to an activity with a substantial nexus within the taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the state. This statute meets those criteria.

Appeal by plaintiff from judgment entered 17 November 2004 by Judge John R. Jolly, Jr. in Wake County Superior Court. Heard in the Court of Appeals 19 October 2005.

*Bell, Davis & Pitt, P.A. by D. Anderson Carmen and John W. Babcock for plaintiff-appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Kay Linn Miller Hobart, for the State.*

CALABRIA, Judge.

Navistar Financial Corporation ("plaintiff") appeals the order denying its motion for summary judgment and granting E. Norris Tolson ("defendant") summary judgment. We affirm.

Plaintiff, a Delaware corporation authorized to conduct business in North Carolina, is a subsidiary of International Truck and Engine Corporation ("International"), also a Delaware corporation. Although plaintiff's truck sales finance business is not located in North Carolina, plaintiff extends credit to North Carolina truck dealers as well as third persons. Dealers acquire inventory such as commercial medium and heavy duty trucks, tractors, and related equipment through "wholesale financing." The second type of financing plaintiff provides is "retail financing" for third persons purchasing trucks from dealers or directly from the manufacturer of the trucks.

In addition to direct loans, plaintiff purchases promissory notes and retains liens on personal property to secure payment of the obligation in the notes. Specifically, as promissory notes are executed by

both North Carolina dealerships and third persons, plaintiff retains a security interest in each customer's personal property located in North Carolina. The wholesale financing branch of the business reserves liens on the current and after-acquired inventory of the dealer, however in the retail financing branch, liens are reserved on the financed equipment.

From 1 January 2000 through 31 March 2003, plaintiff engaged in business with twenty-eight North Carolina dealerships. Over that same time period, plaintiff paid over seven hundred thousand dollars in North Carolina installment paper dealer taxes pursuant to N.C. Gen. Stat. § 105-83.

On 19 June 2003, plaintiff filed a complaint alleging the following: "taxes paid by [plaintiff] . . . pursuant to N.C. Gen. Stat. § 105-83 which result from [plaintiff's]" wholesale and retail financing business "during the period of 1 January 2000 through 31 March 2003 were overpayments;" taxes assessed pursuant to § 105-83 were invalid because plaintiff did not "engage in North Carolina in the business of dealing in . . . installment paper . . . in connection with" either its wholesale or retail business "within the meaning of N.C. Gen. Stat. § 105-83;" "[a]ll material activities incident to the assignment of promissory notes between International and [plaintiff] took place outside of North Carolina;" and, plaintiff "is entitled to a judgment against the [North Carolina] Department of Revenue refunding $693,788.79 . . . respect[ing] its wholesale financing operations" and "$14,830.62 . . . respect[ing] its retail financing operations."

Cross motions for summary judgment were heard on 27 October 2004. The court determined there was no genuine issue as to any material fact with regard to the claims stated in plaintiff's complaint and granted defendant's motion for summary judgment on 17 November 2004. Plaintiff appeals.

I. *Summary Judgment*:

[1] Plaintiff first argues the trial court erred by denying their summary judgment motion and granting defendant the same due to the following assertions: N.C. Gen. Stat. § 105-83 is not applicable to either plaintiff's wholesale or retail financing business; that North Carolina precedent requires a refund of taxes paid; and that material issues of fact remain rendering summary judgment inappropriate. We disagree.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2005). "[B]efore summary judgment will be properly entered, the *moving party* has the *burden* to show the lack of a triable issue of fact and . . . that he is entitled to judgment as a matter of law." *Moore v. Crumpton*, 306 N.C. 618, 624, 295 S.E.2d 436, 441 (1982) (emphasis added). The movant carries this burden "by proving that an essential element of the opposing party's claim is nonexistent or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim." *Zimmerman v. Hogg & Allen, Prof'l. Ass'n.*, 286 N.C. 24, 29, 209 S.E.2d 795, 798 (1974). "[A]ll inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (internal quotations and citation omitted).

I(a). *Applicability of N.C. Gen. Stat. § 105-83*:

N.C. Gen. Stat. § 105-83, in pertinent part, provides

*Every person* engaged *in the business of dealing in, buying*, or discounting *installment paper*, notes, bonds, contracts, or evidences of debt for *which, at the time of* or in connection with *the execution of the instruments, a lien is reserved or taken upon personal property located in this State to secure the payment of the obligations, shall submit* to the Secretary . . . *a full . . . statement . . . of the total face value of the obligations dealt in*, bought, or discounted within the preceding three calendar months *and*, at the same time, *shall pay a tax* of two hundred seventy-seven thousandths of one percent (.277%) *of the face value of these obligations.*

N.C. Gen. Stat. § 105-83(a) (2005) (emphasis added). Plaintiff contends that "because they do not in North Carolina carry on the business of an installment dealer," N.C. Gen. Stat. § 105-83 does not apply to either its wholesale or retail financing business.

"Statutory interpretation properly begins with an examination of the plain words of the statute." *State ex rel. Banking Comm'n v. Weiss*, 174 N.C. App. 78, 83, 620 S.E.2d 540, 543 (2005) (quoting *Three Guys Real Estate v. Harnett County*, 345 N.C. 468, 472, 480 S.E.2d

681, 683 (1997)). Consequently, "[w]here the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning." *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990). According to Black's Dictionary, "plain meaning" is "[t]he meaning attributed to a document by giving the words their ordinary sense, without referring to extrinsic indications of the author's intent." Black's Law Dictionary 1002 (8th ed. 2004). Thus, the statute "must be given effect and its clear meaning may not be evaded by an administrative body or a court under the guise of construction." *State ex rel. Utilities Comm'n v. Edmisten*, 291 N.C. 451, 465, 232 S.E.2d 184, 192 (1977).

N.C. Gen. Stat. § 105-83 applies to any individual "dealing in" or buying installment paper obligations secured by personal property located in North Carolina. Simply put, there is no requirement in N.C. Gen. Stat. § 105-83 limiting the liability for this tax provision to individuals in the installment paper business only located in North Carolina. The essential nexus for application of the statute's tax provision is that the individual "dealing in" or buying installment paper secures repayment of the obligation by attaching a lien to personal property located in North Carolina. Thus, when appellant secured repayment of promissory notes by attaching liens on personal property located in North Carolina, N.C. Gen. Stat. § 105-83 became applicable. Consequently, appellant's assertion that the activities directly related to the actual transfer of the obligation—the execution, payment, and assignment of the promissory note—must occur within North Carolina to incur tax liability are unavailing. Therefore, because appellant engaged in the business of buying installment paper reserving liens on property located in North Carolina, appellant was properly assessed tax under N.C. Gen. Stat. § 105-83 since this statute imposes a tax for the privilege of carrying on business in the State of North Carolina. Furthermore, according to the plain language of the statute, there is no differentiation or distinction to be made as to whether the business is of the wholesale, retail or hybrid variety. Thus, based upon the above analysis, N.C. Gen. Stat. § 105-83 is applicable to both appellant's wholesale and retail financing business.

I(b). *Precedent*:

Plaintiff further contends *Chrysler Fin. Co., LLC v. Offerman*, 138 N.C. App. 268, 531 S.E.2d 223 (2000), is controlling precedent and consequently, necessitates a refund. This Court addressed two essential questions in *Chrysler* based upon an old version of N.C. Gen. Stat.

§ 105-83[1]: "whether: (I) Chrysler Financial is engaged in the business of dealing in . . . installment paper within the meaning of N.C. Gen. Stat. § 105-83 and, if so; (II) [whether] Chrysler Financial engaged in this business in the State of North Carolina within the meaning of N.C. Gen. Stat. § 105-83." *Id.*, 138 N.C. App. at 272, 531 S.E.2d at 225. This Court read the old statutory language to require that "both the assignment of a receivable take place in North Carolina and that a lien be reserved or taken upon property located in North Carolina." *Id.* Because the old version of N.C. Gen. Stat. § 105-83 required any person engaging in the business of dealing in installment paper to procure a state license if "purchasing such obligations *in this State*," this Court correctly ascertained in *Chrysler* that plaintiff had to engage in North Carolina in the business of an installment paper dealer for the tax to apply. However, in the instant case, there is no statutory command requiring a state license to buy obligations in this State as part of N.C. Gen. Stat. § 105-83. Thus, absent such a requirement, N.C. Gen. Stat. § 105-83 is applicable whether or not individuals engage in the business of an installment paper dealer in North Carolina as long as they reserve liens on property located in North Carolina to secure the obligation. Therefore, *Chrysler* is not controlling precedent and plaintiff is not entitled to a refund under its rationale.

I(c). *Material Issues of Fact*:

Plaintiff finally contends material issues of fact exist which precluded the trial court granting summary judgment for defendant. Plaintiff expressly contends the question before this Court is "whether there is a material issue of fact that [plaintiff] conducts activity in North Carolina which is sufficiently incident to the receipt of promissory notes from [International] to justify taxation. In section I(a). of this opinion, "*Applicability of N.C. Gen. Stat. § 105-83*," we determined "when appellant secured repayment of promissory notes by attaching liens on personal property located in North Carolina, N.C. Gen. Stat. § 105-83 became applicable." Because we have already determined plaintiff engaged in activity warranting application of the § 105-83 tax, there is no genuine issue of material fact regarding plaintiff's actions within North Carolina as it relates to justification of

---

1. The old version of N.C. Gen. Stat. § 105-83, applicable in *Chrysler*, 138 N.C. App. at 272, 531 S.E.2d at 225-26, included the following pertinent language absent from the current version applicable in the instant case: "Every person . . . shall apply for and obtain from the Secretary a State license for the privilege of *engaging in such business or for the purchasing of such obligations in this State . . . .*" (emphasis added).

the assessed tax under § 105-83. "When any . . . activity incident to . . . [the] business [of dealing in, buying and/or discounting installment paper] occurs in North Carolina, G.S. 105-83 applies." 17 NCAC 4B.2905 (June 2002). The assignments of error relating to summary judgment, numbers one through five and eight through ten, are overruled.

II. Due Process and Commerce Clauses:

II(a). *Due Process Clause*:

**[2]** Plaintiff argues application of N.C. Gen. Stat. § 105-83 violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. We disagree. The United States Supreme Court has held "[t]he Due Process Clause 'requires some definite link, some *minimum connection, between a state and the person, property* or *transaction it seeks to tax*[.]' " *Quill Corp. v. North Dakota*, 504 U.S. 298, 306, 119 L. Ed. 2d 91, 102 (1992) (quoting *Miller Brothers Co. v. Maryland*, 347 U.S. 340, 344-45, 98 L. Ed. 744, 748 (1954)). Further, " 'income attributed to the State for tax purposes must be rationally related to values connected with the taxing State.' " *Id.* (quoting *Moorman Mfg. Co. v. Bair*, 437 U.S. 267, 273, 57 L. Ed. 2d 197, 204 (1978)). Since "[d]ue process centrally concerns the fundamental fairness of governmental activity . . . due process . . . analysis requires that we ask whether an *individual's connections* with a State are *substantial enough* to legitimate the State's exercise of power over him." *Id.*, 504 U.S. at 312, 119 L. Ed. 2d at 106.

Plaintiff asserts there must be a *sufficient* nexus between the activity taxed and the activity of the taxpayer within the taxing statute for the application of the tax to be constitutional and not offend due process. Plaintiff contends the transfer of promissory notes from International to them is the activity being taxed and moreover, because this activity occurred exclusively in Illinois, they lack the necessary connections with North Carolina to justify imposition of the § 105-83 tax. Plaintiff's argument is unavailing.

In the instant case, plaintiff has *substantial* connections necessary for the State to legitimately levy taxes upon its business and not violate the Due Process Clause. Plaintiff executed promissory notes with North Carolina dealerships as well as third persons and further, purchased contracts from International which had reserved liens upon each customer's personal property located in North Carolina. Numerous liens secured payments to the plaintiff for obli-

gations in promissory notes. Thus, from 1 January 2000 through 31 March 2003, plaintiff engaged in wholesale and retail transactions with a variety of North Carolina businesses and individuals. In fact, plaintiff admits "[they] do[] business in North Carolina." Furthermore, the activity being taxed is not, as plaintiff believes, the specific transfer of promissory notes, but rather, according to the express language of § 105-83, the business of "dealing in" installment paper for which liens are reserved upon personal property located in North Carolina. Accordingly, N.C. Gen. Stat. § 105-83 taxes business activities rationally related to values connected with North Carolina. Thus, according to *Quill, supra,* there exists (1) plentiful minimum connections between the plaintiff's wholesale and retail business and North Carolina and (2) a rational relationship between the business activity taxed and values associated with North Carolina to justify the State's imposition of the § 105-83 tax. Consequently, plaintiff has "purposefully avail[ed] itself of the benefits of an economic market in [North Carolina]." *Id.,* 504 U.S. at 307, 119 L. Ed. 2d at 103. This assignment of error is overruled.

II(b). *Commerce Clause*:

[3] The plaintiff next argues application of N.C. Gen. Stat. § 105-83 violates the Commerce Clause, Article I, Section 8 of the United States Constitution. We disagree. The Constitution expressly grants to Congress the power to "regulate [c]ommerce with foreign [n]ations, and among the several [s]tates[.]" U.S. Const. art. I, § 8, cl. 3. Moreover, "the Commerce Clause is more than an affirmative grant of power; it has a negative sweep as well" in that " 'by its own force' [it] prohibits certain state actions that interfere with interstate commerce." *Quill,* 504 U.S. at 309, 119 L. Ed. 2d at 104 (quoting *South Carolina State Highway Dep't v. Barnwell Bros., Inc.,* 303 U.S. 177, 185, 82 L. Ed. 734, 739 (1938)). This notion of a "dormant" Commerce Clause means "[a] State is . . . precluded from taking any action which may fairly be deemed to have the effect of impeding the free flow of trade between States." *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 278, 51 L. Ed. 2d 326, 330 n.7 (1977) (citations and internal quotation marks omitted).

Under the *Complete Auto* test, a state tax will be sustained as constitutional under the Commerce Clause so long as the "tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the

State." *Id.*, 430 U.S. at 279, 51 L. Ed. at 331. In *Quill,* the United States Supreme Court described the effect of the *Complete Auto* test in the following manner:

> The second and third parts of that analysis, which require fair apportionment and non-discrimination, prohibit taxes that pass an unfair share of the tax burden onto interstate commerce. The first and fourth prongs, which require a substantial nexus and a relationship between the tax and state-provided services, limit the reach of state taxing authority so as to ensure that state taxation does not unduly burden interstate commerce.

*Quill,* 504 U.S. at 313, 119 L. Ed. 2d at 107. A thorough analysis of each prong of the *Complete Auto* test reveals N.C. Gen. Stat. § 105-83 does not violate the Commerce Clause.

First, as to the initial prong of the *Complete Auto* test, that the tax is applied to an activity with a substantial nexus to the taxing state, plaintiff merely reasserts their due process argument. This argument was refuted above and is equally unavailing here. In the instant case, plaintiff's business of dealing in installment paper has a substantial nexus with North Carolina. Plaintiff purchased installment paper from North Carolina wholesale and retail businesses and individuals and secured the multiple obligations to repay the promissory notes by reserving liens upon personal property located in North Carolina. Thus, application of N.C. Gen. Stat. § 105-83 to plaintiff's business complies with the first prong of *Complete Auto*.

The second prong of the *Complete Auto* test requires an answer to whether the tax is fairly apportioned. "[T]he central purpose behind the apportionment requirement is to ensure that each State *taxes* only its *fair share* of an interstate transaction." *Goldberg v. Sweet,* 488 U.S. 252, 260-61, 102 L. Ed. 2d 607, 616 (1989) (emphasis added). "[W]e determine whether a tax is fairly apportioned by examining whether it is internally and externally consistent." *Id.*, 488 U.S. at 261.

> The first . . . component of fairness in an apportionment formula is what might be called *internal consistency*—that is the formula must be such that, if applied by every jurisdiction, it would result in no more than all of the . . . business's income being taxed. The second and more difficult requirement is what might be called *external consistency*—the factor or factors used in the appor-

tionment formula must actually reflect a reasonable sense of how income is generated.

*Container Corp. of America v. Franchise Tax Bd.*, 463 U.S. 159, 169, 77 L. Ed. 2d 545, 556 (1983) (emphasis added). Consequently, "[t]o be internally consistent, a tax must be structured so that if every State were to impose an identical tax, no multiple taxation would result." *Goldberg*, 488 U.S. at 261, 102 L. Ed. 2d at 617. Conversely, "[t]he external consistency test asks whether the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed." *Id.*, 488 U.S. at 262. Importantly, "[t]he Constitution does not invalidat[e] an apportionment formula whenever it may result in taxation of some income that did not have its source in the taxing State." *Container Corp.*, 463 U.S. at 169-70, 77 L. Ed. 2d at 556 (citation and internal quotation marks omitted). However, the United States Supreme Court "will strike down the application of an apportionment formula if the *taxpayer can prove by clear and cogent evidence* that the income attributed to the State is in fact out of all appropriate proportions to the business transacted . . . in that State, or has led to a grossly distorted result." *Id.*, 463 U.S. at 170 (citations and internal quotation marks omitted).

Plaintiff failed to prove by "clear and cogent evidence" the revenue paid to North Carolina through application of the § 105-83 tax is either out of reasonable proportion to the business transacted by plaintiff or has led to a grossly distorted result. First, plaintiff renews their argument that the activity subject to the tax occurred outside of North Carolina and thus there was no apportionment provision in the statute. In fact, as to the "external consistency" branch of the apportionment prong, this is plaintiff's entire argument. This argument was dismissed under our analysis regarding due process and remains unavailing here as well for the activities taxed under § 105-83, including transacting with North Carolina wholesalers and retailers for installment paper and securing those debt obligations through liens reserved on personal property located in North Carolina, were certainly, according to *Goldberg, supra*, in-state components of the activity being taxed.

Second, plaintiff contends the tax violates the "internal consistency" branch of the apportionment prong in that they would be subject to multiple taxation were another state to enact identical legislation to N.C. Gen. Stat. § 105-83. However, "[i]nternal consistency is preserved when the imposition of a tax identical to the one in ques-

tion by every other State would *add no burden to interstate commerce* that intrastate commerce would not also bear." *Oklahoma Tax Comm'n v. Jefferson Lines*, 514 U.S. 175, 185, 131 L. Ed. 2d 261, 271 (1995) (emphasis added). Consequently, "[t]his test asks nothing about the degree of economic reality reflected by the tax, but simply looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate." *Id.*, 131 L. Ed. 2d at 271-72.

In the instant case, if any other state passed a statute identical to N.C. Gen. Stat. § 105-83, that state would tax the following business activity: the purchase of installment paper when, at the time of the execution of the instrument, to secure that obligation, a lien was reserved upon personal property located within the taxing state. Practically speaking then, if Virginia passed such a statute, it would tax such business only if liens were reserved upon personal property located in Virginia, not North Carolina. Consequently, according to *Goldberg, supra*, there is no danger of multiple taxation because as to that individual business transaction only the state where liens are reserved could impose the tax. Thus, N.C. Gen. Stat. § 105-83 complies with the second prong of *Complete Auto*.

The third prong of the *Complete Auto* test requires an answer to whether the state tax discriminates against interstate commerce. "A State may not impose a tax which discriminates against interstate commerce . . . by providing a direct commercial advantage to local business." *Jefferson Lines*, 514 U.S. at 197, 131 L. Ed. 2d at 279 (citation and internal quotation marks omitted). Consequently, "States are barred from discriminating against foreign enterprises competing with local businesses and from discriminating against commercial activity occurring outside the taxing State[.]" *Id.* (citations omitted).

In the instant case, N.C. Gen. Stat. § 105-83 does not discriminate against foreign enterprises competing with local businesses as each must pay the privilege tax if they purchase installment paper reserving liens upon property located in North Carolina. This in no way limits interstate commercial activity for no advantage is given to in-state businesses liable under N.C. Gen. Stat. § 105-83 for taxes due when compared to out-of-state businesses engaged in the identical practice. Thus, N.C. Gen. Stat. § 105-83 complies with the third prong of the *Complete Auto* test.

The fourth prong of the *Complete Auto* test requires an answer to whether the tax is fairly related to the services provided by the State. "The purpose of this test is to ensure that a State's tax burden is not placed upon persons who do not benefit from services provided by the State." *Goldberg*, 488 U.S. at 266-67, 102 L. Ed. 2d at 620. Moreover,

> [t]he fair relation prong . . . requires *no detailed accounting of the services provided to the taxpayer on account of the activity being taxed* . . . [for] [i]f the event is taxable, the proceeds from the tax may ordinarily be used for purposes unrelated to the taxable event. Interstate commerce may thus be made to pay its fair share of state expenses and contribute to the cost of providing all governmental services, including those services from which it arguably receives no direct benefit.

*Jefferson Lines*, 514 U.S. at 199-200, 131 L. Ed. 2d at 281 (emphasis added) (citation and internal quotation marks omitted). Consequently, "the measure of the tax [need only] be reasonably related to the taxpayer's presence or activities in the State." *Id.*, 514 U.S. at 200.

The tax is reasonably related to plaintiff's presence and activities in North Carolina. Specifically, plaintiff executed promissory notes with North Carolina dealerships as well as third persons and further, retained liens through customers upon personal property located in North Carolina. Numerous liens secured payments on obligations in promissory notes. Thus, from 1 January 2000 through 31 March 2003, plaintiff engaged in wholesale and retail transactions with a variety of North Carolina businesses and individuals. Under the rationale provided in *Jefferson Lines*, *supra*, the tax was fairly related to the services provided by North Carolina. Thus, N.C. Gen. Stat. § 105-83 complies with the fourth and final prong of the *Complete Auto* test. This assignment of error is overruled.

In sum, we affirm the trial court's grant of defendant's motion for summary judgment and further find N.C. Gen. Stat. § 105-83 does not violate either the Due Process Clause or Commerce Clause of the United States Constitution.

Affirmed.

Judges HUDSON and BRYANT concur.